Where A. told
B., that if he
would take one
of his mares to
horse, and pay
for the same,the
foal should be
his property,
which B. did,and
afterwards had
the complete
and uncontroll-
ed possession of
the foal, 'al-
though this was
not a gift. yet
the property
thereby became
vested in B.
A delay in sell-
ing property le-
vied under an
execution, does
not render the
sale void in re-
spect to an exe-
cution subse-
quently issued.
Where proper-
ty is sold under
an execution,
part of which is
present, and
part absent from
the sale,the sale
is valid as to the
property which
was present.

## LINNENDOLL *against* DOE AND TERHUNE.

THIS was an action of trespass for taking and carrying away two horses, the property of the plaintiff, which was tried before his honour, the chief justice, at the *Saratoga* circuit, in *September*, 1816.

It appeared, that when the plaintiff was about sixteen years of age, his father told him, that if he would take one of his mares to horse, and pay for the same, the foal should be his property: the plaintiff did so, and the foal, which is a spotted horse, and one of the horses in question, was always called and considered as the plaintiff's, although it was kept in his father's pasture, free of expense, until the plaintiff was 21 years old. In the spring of 1811 a *fi. fa.* was issued in favour of one *Shoemaker*, against *John Linnendoll*, the plaintiff's father, under which his property was levied upon, among which was a gray horse, the other horse in question. Before the sale of the property, which did not take place until *April*, or *May*, 1813, *Shoemaker* assigned his judgment to *Lansing*, who directed a sale to be made; at which sale the plaintiff purchased the gray horse, which was bid off in the same lot with another horse which was absent, and which was worth little or nothing. By the directions of *Lansing*, the plaintiff's note at 90 days was taken for the articles which he purchased, and the plaintiff has since paid the note. A witness swore, that he understood from the plaintiff, that he was attending the sale to purchase articles which should happen to go under price, with intention to let his father and his family have the use of them. The horses in question were afterwards seised by the defendants under a *fi. fa.* in favour of one *Black-leach* against the plaintiff's father, and bought by the plaintiff's brother, of whom the plaintiff afterwards bought them for 250 dollars. There had been no visible alteration in the possession of the gray horse, after the sale to the plaintiff, owing to the circumstance that *John Linnendoll* lived with his son in the same house, and on the same farm, after, as well as before the sale. The counsel for the defendants, at the trial, offered to show, that at the first sale, the property sold was not present, and, including the gray horse, was bid off by the plaintiff for 60 dollars, for which he gave his note; which evidence the judge

over-ruled, unless it was proved that the plaintiff was privy to the fraud. but allowed the defendants to prove that the horse was purchased in the same lot with other property which was not exposed.

The jury, under the direction of the judge, found a verdict for the plaintiff for 190 dollars.

A motion was made to set aside the verdict, and for a new trial, on a case made, which was submitted, with a reference to the authorities, without argument.

*Per Curiam.* There is no ground whatever, upon which the plaintiff's right to the horse, called in the case the spotted horse, can be questioned. None of the rules or principles of law, in relation to the gift of a chattel, are applicable to the case. The mode and manner in which the plaintiff acquired his right excludes any such application. But, admitting this is to be considered as a gift, every thing was done that the law required to vest the property in the plaintiff; he always had the complete and uncontrolled possession, and used and treated the horse as his own.(*a*)

Nor is there any thing to impeach the plaintiff's title to the other horse purchased at the sheriff's sale. The horse was duly levied upon by the sheriff before the return day of the execution; and although the delay before the sale was very considerable, yet, the sale was made more than one year before the horse was taken under the second execution, and possession was taken and continued by the plaintiff. There does not appear to have been any conflicting executions at the time of the sale; and no one had a right to complain of the delay, for no one could have been prejudiced thereby, except the plaintiff in the execution. There was no irregularity in the sale, as it respects this horse. He was present and open to the view of purchasers, and although the sale might have been void as to the other property not present at the place of sale, it cannot affect the sale of this horse. He was set up, it is true, with another old horse, worth little or nothing; and the whole 60 dollars bid by the plaintiff for all the property has been paid, and a good title only acquired to this horse. *Blackleach* might, perhaps, have pursued the other property bid off by the plaintiff, but there can be no ground for his

New-York, May, 1817.

Linnendoll
v.
Doe.

(*a*) Vide *Cook* v. *Husted,* 12 *Johns. Rep.* 183.

taking the horse in question. There does not appear to be any-
thing fraudulent in the conduct of the plaintiff. The property
was regularly and fairly advertised, and the plaintiff had a good
right to attend the vendue, and purchase the property, with a
view of letting his father and family have the use of it. The
motion for a new trial must be denied.

Motion denied.