## STIEF *vs.* HART.

The judgment of the Supreme Court determining that a Sheriff holding an execution against a pledgor, may by virtue thereof take the property pledged out of the hands of the pledgee into his own possession, and sell the right and interest of the pledgor therein, affirmed, the Judges being equally divided upon the question.

After a sale by the officer in such a case, the pledgee is entitled to the possession of the property until the purchaser redeems it from the pledgee.

Whenever a power is given by statute, every thing necessary to make it effectual, or requisite to attain the end in view, is implied. *Per* JEWETT, C. J.

So when the law commands a thing to be done, it impliedly authorizes the performance of all acts necessary to the execution of the command. *Per* JEWETT, C. J.

Error from the Supreme Court. Stief brought replevin for a quantity of caps and muffs, which the defendant as Sheriff of the city and county of New York, had levied upon and taken possession of under an execution against the property of Ezra Willmarth, Jr. Issue being joined, the cause was tried at the New York Circuit in April, 1843. On the trial it was shewn that when the Sheriff took the goods, they were in possession of the plaintiff as a pledge for the payment of a note which the plaintiff held against Willmarth. The Circuit Judge charged the jury that a Sheriff holding an execution against a pledgor may by virtue thereof take the property pledged out of the hands of the pledgee into his own possession, and sell the right and interest of the pledgor therein. To this charge the plaintiff excepted. The jury found a verdict for the defendant, and the plaintiff moved in the Supreme Court for a new trial upon a bill of exceptions. That Court denied the motion and gave judgment for the defendant.

*A. Taber*, for Plaintiff in error.

*S. Stevens*, for Defendant in error.

*Points for Plaintiff in error.*

I. STIEF had such a property in the goods, that he could have maintained trespass against the general owner, had he

Stief *v.* Hart.

removed them without Stief's consent, and before the lien was discharged.    (10 *Wend.* 318.)

II. If trespass would lie against the general owner for interference with Stief's possessory title, it will lie against the Sheriff for the same cause, unless the Sheriff, by virtue of an execution, can acquire a greater right of control over, and a greater interest in, the property of the execution defendant than the latter himself has.

III. The 2d Revised Statutes, page 366, sec. 20, authorizes the "right and interest" of a pledgor to be sold on execution, but does not interfere with the rights of a pledgee.

In this property, the right to the possession was in Stief, and of course the possessory title of the general owner had been divested, and could not be sold; yet the Sheriff took the property from the possession of Stief, an act which the general owner himself could not do.

IV. The greater power includes the less; and if sections 20 and 23, as declared by the Supreme Court in 6th Hill, 484, give the Sheriff the power to have the property in view when sold, that power may, and therefore ought to be exercised without removing the property from the possession of the pledgee. If the Sheriff can remove, he can also enter upon the pledgee's premises to sell, and may advertise it to be sold without removal, and thus leave the rights of the pledgee undisturbed.

V. The statute does not confer upon the Sheriff power to remove the property, because,

1. At common law, the Sheriff could not remove pledged property without paying the lien; (*Story on Bailment*, 238, *sec.* 353;) though the "right and interest" of the pledgor could be sold on execution.    (4 *Wend.* 292.)

2. The statute, secs. 20 and 23, 2 R. S. 367, does not alter, but is merely declaratory of the common law.    (*Revisor's Notes, part 3d, chap.* 6, *title* 5, *secs.* 17 *and* 20; 17.*J. R.* 116; 14 *do.* 222.)    Except that as to the power of a Sheriff to sell assigned or bailed goods, the

decisions were conflicting. (5 *J. R.* 345; 4 *Cowen*, 469.)

3. If "personal property" in the 23d sec. includes the "right and interest" of a pledgor in the 20th sec., then the last clause of the 23d sec. must also apply to pledged property, and the Sheriff who takes it must offer it for sale in such "*lots and parcels as will bring the highest price;*" whereas pledged property must be sold in one parcel, and *cannot* be divided.

*Points for Defendant in error.*

I. The statute confers the right of levy upon goods pledged. (2 *R. S.* 290, *sec.* 20, *2d ed.*)

II. Personal property cannot be sold unless the same be present, and within the view of those attending the sale. (2 *R. S.* 291, *sec.* 23, *2d ed.*)

III. The Sheriff having the right to levy, has the right to do all that the law requires to enable him to sell. (*Burrall vs. Acker*, 23 *Wend.* 610; 14 *J. R.* 352; 15 *J. R.* 179.)

IV. He had the right therefore to remove the property to a place of safe deposit, and he is not a *trespasser* for so doing. (*Scrugham vs. Carter*, 12 *Wend.* 134; *Randall vs. Cook*, 17 *Wend.* 58; *Phillips vs. Cook*, 24 *Wend.* 395; *Waddell vs. Cook*, 2 *Hill*, 47, *note.*)

RUGGLES, J. The decision of the question presented by the exception in this case, depends upon the construction of the 20th section of 2d Revised Statutes, page 366, taken in connexion with sections 18, 19, 21 and 23.

"SEC. 18. Upon executions against the property of a defendant, the officer shall levy upon any current gold or silver coin belonging to the defendant, and shall pay and return the same as so much money collected without exposing the same for sale at auction.

"SEC. 19. Upon executions the officer may levy upon and sell any bills or other evidences of debt issued by any monied corporation, or by the Government of the United States, and

circulated as money, which shall belong to the defendant in such execution.

"Sec. 20. When goods or chattels shall be pledged for the payment of money or the performance of any contract or agreement, the right and interest in such goods, of the person making such pledge, may be sold on execution against him, and the purchaser shall acquire all the right and interest of the defendant, and shall be entitled to the possession of such goods and chattels, on complying with the terms and conditions of the pledge.

"Sec. 21. No sale of any goods and chattels shall be made by virtue of any execution unless previous notice of such sale shall have been given, six days successively, by fastening up written or printed notices thereof, in three public places of the town where such sale is to be had, specifying the time and place where the same is intended to be had.

"Sec. 23. No personal property shall be exposed for sale unless the same be present and within the view of those attending such sale : it shall be offered for sale in such lots and parcels as shall be calculated to bring the highest price."

It will be observed, on reference to the statute, that the 18th and 19th sections speak of a levy, and the 20th does not ; and from this difference in language it was inferred on the argument that the officer might sell under the 20th section without making a previous levy. But it will be seen that the mode of sale is so regulated by the statute as to require the officer to have the custody and control of the property sold ; and the officer is therefore justified in making a levy, because a levy is necessary to a sale in the manner directed. Whenever the law requires an act to be done, it authorizes the agent to do what is necessary to accomplish it in the mode pointed out for its performance.

The 23d section declares "that no personal property shall be exposed for sale by the Sheriff unless the same be present and within the view of those attending the sale." If this provision is applicable to cases arising under the 20th section, the Sheriff must have the power to take the goods into his

custody; because without it, he cannot produce the goods at the sale.

It cannot be seriously urged that the officer may discharge his duty without a levy, by advertising the goods to be sold on the premises of the pledgee for the purpose of having them within view of the bidders there, while the goods may be removed at the pleasure of the pledgee, beyond the reach of the Sheriff or purchaser; and moreover, if the statute gives the Sheriff no authority to take the goods for the purpose of a sale, it gives him none to enter on the pledgee's premises for that purpose; for the sale may as well be any where else as there unless it be in connection with the power to exhibit the goods to the persons attending the sale.

In *Bakewell* vs. *Cook*, 6 *Hill* 484, the Supreme Court decided this question, holding that the 23d section applied to and regulated sales authorized by the 20th section, as well as other sales of personal property. Indeed it is impossible to give to the 23d section any other construction, unless it can be shewn that the right and interest of a pledgor in goods pledged is not "*personal property.*" These words are used in the 23d section, and have a well settled meaning. They embrace not only goods, chattels, coin, bills and evidences of debt, but in their strict and more appropriate legal definition signify the right and interest of the owner or owners in these articles. "Property" is defined by Jacob, in his Law Dictionary, to be "the highest right a man can have to any thing; being used for that right which one hath in lands or tenements, goods or chattels, which no way depends on another man's courtesy." In *Morrison* vs. *Semple*, 6 *Bin.* 94, Chief Justice Tilghman said, "that property signified the right or interest which one has in lands or chattels, and that it was used in that sense by the learned and unlearned, by men of all ranks and conditions;" and in *Jackson* vs. *Housel*, 17 *Johns. Rep.* 283, Chief Justice Tilghman's definition is cited and approved by the late Chief Justice Spencer. In that case and in the case of *Wall* vs. *Langlands*, 14 *East* 370, it was held that a devise by a testator of all his "property"

Stief *v.* Hart.

passed his whole real and personal estate, and comprehended all he was worth. The words " *general property*," and " *special property*" are constantly used in the books to denote, not the chattel itself, but the different interests which several persons may have in it. Indeed the revisers could not have selected, and the language does not afford words better adapted to apply to and embrace every thing mentioned in the 19th and 20th sections of the statute as the subjects of sale than the words " personal property" used in the 23d section. If the words *goods and chattels* had been used in the 23d section, they would have afforded far more ground for doubt, because they are less comprehensive in their meaning. But even then a liberal construction would make them applicable to the sales mentioned in the 19th and 20th sections, because the things pledged are in fact sold subject to the redemption of the pledge. They are used in the 21st section, which directs a six day notice of sale; and if the plaintiff in error can be supposed to have shewn that the officer may sell the defendant's interest in goods pledged without producing the goods at the sale, he has shewn by stronger reason that the sale may be made without notice; because if the words " personal property" do not include the thing to be sold, the words " goods and chattels" certainly do not : and yet no one can doubt that the Legislature intended that sales under the 20th section should be regulated by the 21st.

Before the 20th section was enacted, debtors had it in their power to place their goods beyond the reach of their creditors by pledging them for the payment of a debt not equal to their value. This was doubtless the fraud alluded to by the Revisers in their note to this section. (3 *R. S.* 727.) " It is submitted," say they, " that the opportunity thus given to fraud and to the injury of creditors, should be avoided." Public sales of personal property not within view of the bidders at the sale were declared void by judicial decisions on the plainest grounds of public policy before the revised statutes were passed. (*Linnendoll* vs. *Doe and Terhune,* 14 *Johns.* 222; *Sheldon* vs. *Soper id.* 352; *Cresson* vs. *Stout,* 17 *Johns.*

116.) The first part of the 23d section is declaratory of the law as it was previously established in these cases. The sale of personal property without having it within the view of the bidders for the purpose of ascertaining and estimating its value, was an intolerable abuse of the process of the courts. They struck it down the moment it appeared, without waiting for a statute. The plaintiff's construction of the 20th section, would set it up again; and not only so, but would render the statute ineffectual for the prevention of the frauds alluded to by the revisers. Where there is a collusive understanding between the pledgor and the pledgee of property not having an uniform quality and value in the market, (such for instance as horses, books, pictures, &c.,) the execution creditor could have no hope of selling the goods for their value unless they were exhibited at the sale, or in some way submitted to the examination of the purchasers; and where there was no such collusion, the sale without viewing the goods would be oppressive and injurious both to the pledgor and the execution creditor. The removal or concealment of the goods by the pledgee would give him an advantage at the sale over all others, and would enable him to buy at the sale at a merely nominal price.

It may be necessary in the case of goods pledged to have them produced at the sale for the purpose of selling, in lots or parcels, according to the latter branch of the 23d section; for it may frequently happen that the sale of a part of the goods, if they are in view of the buyers, may be sufficient to satisfy the pledge; and in such case the residue should be divided and sold in the ordinary way.

The purchaser ought, moreover, to have the opportunity at the sale of complying with the terms and conditions of the pledge, and of taking possession of the property. This just advantage he loses, if the goods are not produced.

It was urged on the argument that the terms "personal property," in the 23d section, could not have been used in the sense here ascribed to them; first, because the removal of the goods by the officer interferes with the pledgee's right of possession; and secondly, because the Sheriff in taking the

Stief *v.* Hart.

pledged goods exercises over them a greater power and control than the pledgor himself could lawfully exercise.

The first answer to these suggestions has been already given. It is that the 23d section, by appropriate language, subjects the sale of pledged goods to the same regulations which prevail in other cases; and we are not at liberty to disobey the statute. The Legislature has an undoubted right to confer the authority on the officer for the purpose of enabling him to execute the writ in such manner as to prevent fraud where it exists between the pledgor and pledgee, and to protect the rights of creditors. If the pledge in this case has been made before the law was enacted, a question might arise as to its retrospective operation. But whether the contract on which the execution issued was made before or after the goods were pledged, is of no importance, because the pledgee took the goods subject to a pre-existing regulation for the benefit of the creditors of the pledgor, prior or subsequent, requiring the goods to be present at the sale. The control exercised by the officer over the property of the pledgee, in taking temporary possession of the pledged goods for the purpose of a sale, is not so great as that which is exercised by the officer in the case of partners and part owners, at common law, according to the modern decisions. In the case of partners, it is true, there is no exclusive right of possession in either one of them, as in the case of the pawnee of goods; but where one partner has exclusive possession in fact, the other is not at liberty to use force to deprive him of the advantage which that possession gives; and if violence be used for that purpose by the partner out of possession, he is answerable, civilly and criminally, for all the injury which results from it. But under an execution against the property of the partner out of possession, the officer is armed with an authority which that partner has not, namely, the authority to seize the partnership goods in the hands of the other partner, and to use force if necessary to take them into his custody; and that not merely for the temporary purpose of effecting a sale and then restoring the possession, as in the case of goods

pledged; but the Sheriff is authorized to deliver the possession to the purchaser, thus putting it beyond the reach of him from whom he took it. (2 *Hill* 47, *Waddell* vs. *Cook*, 3 *Denio* 125; *Walsh* vs. *Adams.*) So the Sheriff may enter the premises of a stranger against his will to take the goods of the debtor which happen to be there, although the debtor himself would be a trespasser in doing so. In these cases the Sheriff is justified, because he could not otherwise satisfy the exigency of the writ, to do which he is clothed with lawful authority, and bound by his duty. When the law authorizes an act, and nothing is done but what is necessary to accomplish it, those who perform it are not trespassers. (14 *Mass. Rep.* 27, *Williams* vs. *Amory.*)

The prevention of frauds, and the protection of the rights of the creditors of the pawner of goods, could not have been effectually accomplished in any other way than by subjecting sales such as that in question, to the same regulations as exist in other cases of personal property. We are not to presume that the power of the officer will be oppressively exercised. The possession of the pledgee will seldom be actually disturbed; and if it be interrupted the interference will commonly lead to the satisfaction of the pledge. But if it should not, the probable injury to the pawnee of the goods is not to be compared with the evil which is likely to result from a sacrifice of the value of goods by a sale at which the purchaser cannot know the quality or value of the article he buys, or where to find it when bought.

I am in favor of affirming the judgment of the Supreme Court.

JEWETT, Ch. J. At common law goods pawned or pledged are not liable to be *taken* in execution in an action against the pawner or pledgor. (*Wilkes* vs. *Ferris*, 5. *John Rep.* 336; *Marsh* vs. *Lawrence*, 4 *Cow. R*, 461; *Badlam* vs. *Tucker*, 1 *Pick.* 389; *Pomroy* vs. *Smith*, 17, *Pick.* 85; *Story on Bail.* § 353, and so the *principle was understood by the revisers, of our Revised Statutes*, 3 *R. S.* 727, *note under* §20. *Scott* vs.

*Scholey* 8. *East* 467 ; *Metcalf vs. Scholey* 5. *Bos. & Pull.* 461. *Srodes vs. Caven,* 3. *Watts, R.* 258 ; *Watson's Sheriff* 181.)

It is only by Statute that the right and interest of the pawner or pledgor of goods and chattels, can be reached by execution against such person. 2. *R. S. 366.* § 20., enacts that "when goods or chattels shall be pledged for the payment of money, or the performance of any contract or agreement, the *right and interest* in such goods, of the person making such pledge, *may be sold* on execution against him, and the purchaser shall acquire all the right and interest of the defendant and shall be entitled to the possession of such goods and chattels, on complying with the terms and conditions of the pledge."

The 23rd. Sec. of this Statute declares that no *personal property* shall be exposed for sale, unless the same be present, and within the view of those attending such sale. If the case of Bakewell vs. Ellsworth (6 *Hill* 484) was correctly decided it is admitted, that it must govern the decision of the case at bar. It is, however, insisted here as it was there, that although the Sheriff was authorized by the 20th Sec. to sell the "right and interest" of the pledgor on execution against him, yet the Statute has not conferred any authority on him to seize or take into his possession the property in the hands of the pledgee preparatory to such sale ; that the Sheriff should exercise the power to sell without taking possession of or removing the property from the possession of the pledgee ; that the term *personal property* in the 23rd Sec. did not apply to or include the "*right and interest*" mentioned in the 20th Sec., and that therefore a sale could legally and properly be made by the Sheriff of such right and interest, without the property being present and within the view of the persons attending the sale.

It was admitted on the argument that if the sale of such right and interest is within the 23rd Sec., that the Sheriff could not sell unless the property was present and within the view of those attending such sale. If, therefore, the Sheriff

has no right to take into his possession the property on making a levy, to hold until he makes a sale of such right and interest and a sale cannot take place unless the property be present at the time and place of sale, it is obvious that such sale must depend upon the mere volition of the pledgee to produce and exhibit it at the time and place of sale ; an absurdity which I think ought not to be ascribed to the legislature in framing the Statute. I agree with the Supreme Court in the construction of this Statute and the course of procedure which the Sheriff, under such circumstances, is authorized and required to adopt, as stated in the case referred to.

The right of the Sheriff to take and hold the goods preparatory to a sale of such right and interest arises by necessary implication from the provisions of the statute referred to. Whenever a power is given by statute, every thing necessary to making it effectual, or requisite to attain the end, is implied. (1. *Kent's Com.* 464., 5. *Ed.*) So where the law commands a thing to be done, it authorises the performance of whatever may be necessary for executing its commands. (*Foliamb's Case* 5, *Coke* 116). I am of opinion that the judgment be affirmed with double costs. (2. *R. S.* 618, §33).

GARDINER, J. The 20th Section, 2 R. S. 367, declares that when goods or chattels shall be pledged for the payment of money, or for the performance of any contract or agreement, the *right and interest* in such goods of the person making such pledge, may be sold upon execution against him, and the purchaser shall acquire all the *right and interest* of the defendant, and shall be entitled to the possession of such goods and chattels, on complying with the terms and conditions of the pledge.

The 23d Section provides, that no personal property shall be exposed for sale, unless the same be present and within the view of those attending such sale : it shall be offered for sale in such lots or parcels as shall be calculated to bring the highest price.

In Bakewell vs. Ellsworth, 6 Hill 485, it was said by the

Stief *v.* Hart.

Supreme Court, "That the term personal property in the 23d section is synonymous with the words right and interest in the 20th section."

Whether this is the true construction of the statute, is the sole question in this case as it was in the one cited. The import of the term personal property, and of the words right and interest in goods pledged, is certainly different. The first includes all things moveable which are the subject of property; the other, a qualified right and interest in the things themselves. The term personal property is used in this law in a restricted sense; it applies to goods and chattels, coin, bills of monied corporations, which partake to some extent of the character of coin, in a word to things which can be felt and handled. But goods and chattels and the right and interest of the pledgor in "such goods," it seems to me, are far from being identical.

It is difficult to account for the use of different terms in the 20th and 23d sections upon the hypothesis assumed by the Supreme Court.

Few men possessed a more accurate knowledge of the force and effect of legal language, than the distinguished gentlemen who revised our laws : that they used terms the legal signification and common understanding of which were different, to convey the same idea, is not probable, nor should this language be so construed, unless such construction is necessary to give effect to the statute. The term personal property was intended to include not merely goods and chattels, but the bills of monied corporations, which were of a mixed character; these last being subjected to seizure like goods and chattels, were to be sold in the same manner, and both were consequently embraced under the general term personal property in the 23d section

To this extent the 19th and 23d sections were declaratory of the law at the time of the revision. (12 *J. R.* 220. Ib. 395. *J. R.* 116, 14 do. 352). The language of both is substantially copied from the decisions of our courts, introducing no new principle, and intended, as I apprehend, to be applicable

to the same kind of property which was the acknowledged subject of seizure, of dirision, and manual delivery at common law.     The 20th section, however, establishes a new principle, and subjects an *interest* in goods to sale which could not be reached at common law.     Its phraseology as we have seen is adapted to that purpose, and of course different from that of the other sections.     The Sheriff is authorised to sell, (not the goods) but the *right* and *interest* of the pledgor, and this *interest* is all that is acquired by the purchaser.     The right to levy upon the bills of monied corporations expressly given in the preceding section, is omitted in the 20th, for the obvious reason, that a *right* is not the subject of a manual taking; it is also *indivisible,* and consequently cannot be sold in *parcels,* as directed by the 23d section as to the personal property therein mentioned.

Had the 20th section related to the sale of real estate, instead of a *right* and *interest* in personal property, effect might be given to its provisions without implying an authority in favor of the Sheriff to change the possession as a means of effecting a sale.     As the law stood at the time of the revision, an Equity of redemption, the mortgagee being in possession, a reversion, and kindred interests in land might have been sold upon execution without any levy upon the land out of which those interests arose, and without interfering with the rightful possession of third persons.  Wood vs. Colvin. (6 *Hill* 230).

The Revisers in their note to the 20th section, after premising that goods bailed or assigned could not be sold at the common law, remark " that no possible evil is apprehended from extending the same *principle which prevails here* in *relation* to *real estate* to personal property," (3 *R. S.* 727.)  By the principle adverted to, a lessor's interest in real estate might be sold, but a lessee could not be divested of his possession as a means of accomplishing such sale.  So in the case of personal property.  No case has been cited, where the manual taking of goods by an officer, has been justified by virtue of an execution against one having neither the possession in fact or

the right of present possession.  The case of partners, joint tenants and tenants in common, all proceed upon the right of the co-partner, and co-tenant, to the possession as well as an interest in the goods taken.  (*Phillips* vs. *Cook,* 2 *Hill* 47 *note.*)  The possession is itself a legal right which may be transferred by sale.  (8 *Wend.* 239 ; 2 *Cow.* 253).

The decision of the Supreme Court makes an exception in the case of a pledge under the statute to a rule otherwise universal.  In the second place the decision deprives the pledgee in all cases of the possession of goods which he has acquired by a valid contract made in good faith and for a valuable consideration with the debtor, and in many instances of the whole benefit of his agreement ; and this without reference to the fact, whether the debt which is to be enforced by execution was incurred prior or subsequent to the bailment.  Thirdly, in the absence of fraud, it gives the officer greater interest in and control over the property, than is possessed or could be exercised by the debtor through whom he makes title, legalizing the manual taking and removal of goods, to which the former had neither the right of possession, or possession in fact.  I cannot believe that an implication attended by such consequences is a necessary one.  The law gives to the creditor the right and interest of the pledgor, and when it grants to the Sheriff authority to transfer that interest without removing the property from the possession of the pledgee, it gives the means of obtaining it. · A sale can be made of an interest in personal as well as in real estate without a prior change of possession, and if a right to levy is implied in behalf of the officer, it ought to be qualified by the right of sale in behalf of which it is invoked. . The latter is limited to the right and interest of the pledgor ; let the Sheriff then seize what the law empowers him to sell, and there could be no just ground of complaint in any quarter.

Again, the reasons upon which the authority of the Sheriff at common law rests, to take exclusive possession of the goods upon execution, apply but partially to the present case.  Those reasons are, first, that it is necessary for their safe keeping ;

Stief *v.* Hart.

secondly, to enable him to divide and sell them in parcels, and lastly, to make delivery to the purchasers. But according to the 20th section of this law, the purchaser is not entitled to possession of the goods; the officer cannot sell in parcels; and the property after sale, remains with the pledgee, with whom the purchaser must adjust the lien and upon whose responsibility he must rely for a delivery. It is true the goods would not always be within view at the time of sale. But they could be described with reasonable certainty, which is all that would be necessary to pass the interest of the pledgor. The same knowledge that would enable the officer to seize and remove the goods in the hands of the pledgee, would enable him to levy upon the interest to be sold, to make an inventory, and to execute a bill of sale, or give such a description that a fair estimate could be made of their value. A view would not determine the price to be paid, since the value of the pledgor's interest would depend upon the lien to which they were liable.

I admit this to be an inconvenience, but it is one which is inseparable from the nature of the interest sold: it is one to which the pledgor is exposed in making a voluntary sale of his interest, and one to which those who claim under him must also submit.

The argument from inconvenience will bear with equal force against the construction of the Supreme Court; for that gives to the lowest executive officer that the law entrusts with its process, with a view to the sale of an inconsiderable interest in a valuable property, the right to override a valid contract between the debtor and pledgee, by removing the whole property from the possession of the latter, detaining it until the day of sale; and for a reasonable time afterwards, to enable the purchaser to ascertain and pay the lien. Of what is a reasonable time the officer of course must be the judge, as there is no one to determine for him.

It makes no difference in the case supposed, whether the judgment was fraudulent or not, whether it was for five dollars or five hundred.

It seems to me that these evils are palpable; and yet if

Stief *v.* Hart.

this be the true construction of the statute, they must have escaped the attention of the revisers, as they assure us they apprehended no possible evil from the adoption of the principle they recommended.

Upon the whole case, therefore, I am of opinion, that the judgment of the Supreme Court should be reversed.

The rights of the pledgee are as important as those of the judgment creditor, they are also prior in point of time, both should be respected, and such a construction should be given to the statute, as will enable the creditor to reach the interest of the pledgor, without essentially impairing the right of the pledgee under his contract.

GRAY, J.   The property in question was delivered by Willmarth, the general owner, to the plaintiff, to secure the payment of a debt owing to the plaintiff.

Besides the delivery of the goods to him as a security for his debt, the plaintiff was authorized, by express arrangement between him and the owner, to sell the goods, and to apply the avails to the extinguishment of the debt for which they were pledged.   On the delivery of the goods, the price at which they were to be accounted for to the owner, was fixed, and it was part of the arrangement between the parties, moreover, that the proceeds of the goods above the price so fixed, should go to the plaintiff, and be retained by him as his profit exclusively.

The plaintiff's right of possession in this case, was coupled with a right to sell, and an interest beyond the mere security for his debt; which, I think, distinguishes this from the ordinary case of a pledge, and gives him the exclusive possession and precludes absolutely the removal of the goods by the Sheriff.   But viewing this as the ordinary case of a pledge, it is entirely clear that the statute, which has changed the common law, and authorizes the sale of the interest of the pledgor in the property pledged, does not authorize the removal of the property out of the possession of the pledgee.

The statute, section 20, 2 R. S., page 366, which authorizes

the sale on execution of the pledgor's interest, qualifies the right which the purchaser acquires therein to the precise interest of the pledgor, and expressly secures the possession of the goods to the pledgee, until a compliance by the purchaser with the conditions of the pledge.

The provisions of the section, taken together, negative, by implication at least if not expressly, the right of the officer, or of any other person, to remove the pledge from the possession of the pledgee. At all events it contains no authority for the officer having the execution to take the goods pledged into his own possession, or to do any other act in respect thereto than to dispose of the same by sale. The Sheriff, by the levy, acquires no other right in the goods pledged than that which, at the time, remained in the pledgor, and as the pledgor clearly had not the right to the possession himself, and could not legally interfere with the possession of the pledgee, so the Sheriff, by his levy, acquired no such right.

By the common law and the adjudications of our Courts, prior to the Revised Statutes, the interest of the pledgor in property pledged, was not the subject of seizure and sale on execution. (*Story on Bailment, sec.* 353; 14 *Johns.* 222; 17 *Johns.* 116; 5 *Johns.* 335; 4 *Cow.* 461; *Revisers' Notes,* 3 *R. S., page* 727, *sec.* 17.) Although in the cases cited on the argument, (4 *Wend.* 292, *and* 10 *Wend.* 318) property in the nature of a pledge was sold on execution, yet the question of the right to sell was not raised, nor passed upon by the Court in either case.

An actual taking and removal of the pledge, is not a necessary incident to a sale thereof by the Sheriff, or in other words, the right to sell does not imply a right to remove. The sale may be effected without an actual interference with the pledgee's possession. The Sheriff, by the 23d section of the same statute, which is an enactment declaratory of the rule as previously settled by judicial decision, requires the presence of the property at the time and place of the sale. This unquestionably gives the Sheriff authority to enter upon the premises where the property may be situated, and have the

Stief v. Hart.

inspection of the property, but does not authorize, either expressly or by necessary implication, its *actual taking* or *removal.* The two sections together give him the right of seeing, levying upon and selling the property, but give him no right to take it out of the possession of the pledgee except upon the terms provided by the 20th section. Having the right, therefore, to visit the place where the goods may be deposited for the purpose of making a levy, he has the same right, also, on the sale subsequently, with all such persons as may attend as bidders, to enter upon the same premises to accomplish the sale. The Sheriff, and all persons accompanying him as bidders, will be protected, and are not liable as trespassers. In the case of the People vs. Hopson, (1 *Denio* 575) it is expressly settled that " where a levy under an execution is made upon personal property which is left in the defendant's possession, the officer may sell on the defendant's premises, and third persons may rightfully attend there as bidders." Nor is the argument that the security of the Sheriff renders an actual taking and removal necessary, well founded. It does not follow that he would be accountable to the judgment creditor for the value of the goods, should the same during the time intermediate the levy and sale be removed by the pledgee, or any other person, beyond the reach of the Sheriff. The statute not having clothed him with authority to remove the goods out of the possession of the pledgee, he will not be held accountable for their loss if that loss is not attributable to his own fault or procurement. Neither the statute, nor the security of the officer, or of the execution creditor, require that the property pledged shall be taken out of the possession of the pledgee.

The statute, withholding from the officer the right to remove the property, imposes upon him no responsibility for its safe keeping, or accountability for any waste or loss not properly chargeable to his default.

The statute, authorizing the sale of a pledge, is restrictive of common law right, and must be construed strictly. Nothing that is not expressly provided for, and given thereby, ca

be taken by intendment or implication. It is entirely clear, from the language of the statute and the note of the revisers accompanying it, that the authority to sell the interest of the pledgor in the property pledged, was not designed to interfere with the possessory right of the pledgee. (*See Revisers' note, 3 R. S., page* 727, *section* 117.)

The cases (12 *Wend.* 134, *Scrugham* vs. *Carter ;* 23 *Wend.* 610, *Burrall* vs. *Acker ;* 24 *Wend.* 395, *Philips* vs. *Cook ;* 17 *Wend.* 58, *Randall* vs. *Cook* ; 2 *Hill* 47, *Note, Waddell* vs. *Cook* ; *and* 4 *Hill* 161, *Birdseye* vs. *Ray,*) relied on as establishing the right of the Sheriff to levy and remove the property pledged from the custody of the pledgee, have no application in the case of a pledge. In the three first cases the property was copartnership property, taken and sold on execution against one of the partners, and the actions were prosecuted by the partners not parties to the execution. The fourth was the case of a sale of the mortgagor's interest in property in the possession of the mortgagor covered by a chattel mortgage, and the fifth and sixth were cases where the property sold was held by several persons jointly, and as tenants in common, and the interest of all were seized and removed for the debt of one.

In all these cases except the case of the chattel mortgage, the owners had severally the right to the possession of the entire property to the exclusion for the time being of the other owners, and the Sheriff had consequently the same possessory right, by virtue of his execution, to which the individual who was the execution debtor was entitled.

The case under consideration is entirely different. In this case there was no joint ownership, no partnership, nor any ownership in common in the property between the plaintiff, the pledgee, and Willmarth, the pledgor.

It is true that in the case of Bakewell vs. Ellsworth, (6 *Hill* 484,) the Supreme Court say that when the interest of the pledgor in property pledged is levied upon, the Sheriff may take the actual possession of the goods. But on looking into the case it will be seen that the question as to the She-

Stief *v.* Hart.

riff's right to the actual possession of the goods was not raised or at all discussed, and what was said by the Court therefore in this respect, can be regarded only as an *obiter dictum,* and not as a deliberate adjudication of the point. The section which authorizes the sale of the pledgor's interest, clearly does not authorize the taking of the goods out of the possession of the pledgee, and the Sheriff in removing the goods in this case, acted without authority and became a *tort-feasor,* and judgment should have been given against him. I am of opinion, therefore, that the judgment of the Supreme Court should be reversed.

WRIGHT, J. Possession is of the essence of the contract of pledge. If the pledgee voluntarily part with the possession he loses the benefit of his security. The right of retainer until the debt is paid, or engagement fulfilled, enters into and forms an essential part of such contract. (*Story on Bailments,* §287 *and cases cited*; 1 *Atk.* 165, 5 *Bing. N. C.* 140 ; 1 *Smith's Leading Cases* 223.) The pledgor may voluntarily dispose of his interest in the pledge, but the purchaser secures no right to the possession until the terms and conditions of such pledge are complied with.

At common law goods pledged were not liable to be taken in execution in an action against the pledgor, until an extinguishment of the pledgee's title. (*Story on Bailments* § 353 *and cases cited.*) Formerly, it seems to have been conceded by the courts of this State, where chattels were bona fide pledged or assigned in trust for the payment of debts or other specified purposes, the residuary interest of the pledgor or assignor, after the purposes of the pledge or trust were satisfied, was not a subject for sale on a *fi. fa.* Therefore, to enable the creditor of the pledgor to reach his interest the Revised Statutes provided that such *interest* may be sold on execution. (2 *Rev. Stat.* 367 § 20 ; *Revisers notes part* 3d, *Chap.* 6, *title* 5, §17. 24.) The provision is as follows:—

"When goods or chattels shall be pledged for the payment of money, or the performance of any contract or agreement,

the *right and interest* in such goods, of the person making such pledge, may be sold on execution against him, and the purchaser shall acquire all the right and interest of the defendant, and *shall be entitled to the possession of such goods and chattels on complying with the terms and conditions of the pledge.*" The intent of the provision is two-fold: 1st, To empower the officer to sell that which it was before conceded he had no authority for selling: 2d, To vest in the purchaser the precise interest of the pledgor. The officer is to do what the pledgor himself might have done and nothing more, to vest in the purchaser his right. The sole aim of the statute is to remedy an existing and admitted evil, viz: the injury to creditors arising from an inability to reach by the process of the law the residuary interest of a pledgor or assignor. I cannot think that it contemplates, in any way, even a temporary disturbance of the pledgee's rights. The power is given to the officer to sell, not the goods and chattels themselves, but the pledgor's "right and interest" therein. He is to sell something in itself incapable of manual seizure.

The question presented in this case is, whether a Sheriff under the section of the statute above cited aided by the provisions of the 23d section following, is authorized to take corporal possession of the pledged property, and remove it from the hands and custody of the pledgee. In other words, whether the statute in securing a benefit to the creditor of the pledgor, contemplated the infringement and disturbance of the rights of the pledgee. For it is idle to assume that no injury can arise to the pledgee by compelling him, before an extinguishment of his title by the payment of his debt or otherwise, to yield up even to an officer of the law the actual possession of his pledge. The undoubted effect, in many cases, would be to jeopard or impair his security.

It is insisted, that as the 20th section authorizes the officer to sell, and the 23d section provides that "no personal property shall be exposed for sale unless the same be present and within the view of those attending such sale;" that the power to take actual possession, and remove the property from

the custody of the pledgee is necessarily implied—that the law having charged the officer with a performance of a duty, he is clothed by implication, with all the power necessary to its full discharge. In the abstract, the principle may be correct, whilst the species of power contended for, in this case, may not follow from it as a consequence. That it does not, it may be urged, 1st, That the power contended for is in derogation of a common law right, and should not be presumed; 2nd, That effect may be given to the statute, and its object fully attained, without destroying the possession of the pledgee; 3d, That the statute does not contemplate a change of the possession of the pledge until after its redemption by the purchaser. The officer is to sell, and the purchaser to acquire all the "right and interest" of the pledgor. The pledgor's interest is transferred by the act of the officer, and the operation of the statute, to the purchaser, placing the latter in the precise relation of the pledgor to the pledgee. But as a *bona fide* pledgee would be entitled to the possession of the pledge against the pledgor and all others, until the bailment was terminated by payment, or his title extinguished in some other way, it is provided that after the sale and legal transfer of the interest of the pledgor to the purchaser, the latter shall have possession " on complying with the terms and conditions of the pledge." The obvious meaning of the section is, that the officer may sell and the purchaser acquire the "interest" of the pledgor, but that the pledgee shall only be divested of his possession of the pledged property after a redemption by the purchaser; 4th, That it is extremely doubtful whether the provisions of the 23d section apply to the sale contemplated by the 20th section, and indeed, if the whole section be read together, it is clear that they do not. In addition to having the property present and within the view of those attending the sale, the section provides that such property " shall be offered for sale in such lots and parcels as shall be calculated to bring the highest price." The residuary interest in goods and chattels cannot be sold in " lots and parcels." But if the Sheriff must necessarily have the pledge in view when offered

for sale, he may comply with the statutory direction without removing the property from the possession of the pledgee. If he can enter upon the pledgee's premises to seize and remove the goods, he can also enter to sell, and may sell without removal, thus leaving the right of the pledgee undisturbed. It is true, that by leaving the property in the possession of the pledgee, the officer would encounter the risk of having it forthcoming at the sale, but if he has no power to remove he would not be responsible, should he fail, by the act of the pledgee, to effect a sale. On the other hand, should he divest the pledgee of his possession, the effect might be to impair, if not wholly destroy, the security of the latter.

I cannot bring my mind to the conclusion that the legislature in giving to the officer the power of disposing of the pledgor's interest for the benefit of his creditors intended, in any respect, to interfere with the common law right of the pledgee to exclusively hold the possession of the property until the bailment was terminated, by a compliance with its terms and conditions. Consequently I am of the opinion that the Circuit Judge erred in charging the jury, in this case, " that where property is pledged for debt and in the possession of the pledgee, a Sheriff having an execution against the pledgor, may by virtue thereof, take the said property out of the hands of the pledgee into his own possession, and remove it, and sell the right and interest of the pledgor therein." I cannot resist the conviction, that, in this State, where vast amounts of property are held in pledge for advances made thereon, the adoption of the principle that a sheriff or constable, having an execution against the pledgor, may arbitrarily divest the pledgee of his possession, would be fraught with the most injurious consequences to the interests of commerce: and I am unwilling, without the clearest expression of legislative intention, to lend my aid to its adoption.

The judgment of the Supreme Court should be reversed, and a *venire de novo* awarded.

BRONSON and JONES, Js., were in favor of affirming the judgment.

JOHNSON, J., was for reversal.          Judgment affirmed.