JAMES B. BOYLAN, JR., appellant,

*v.*

EUGENE KELLY, respondent.

JAMES McKENNEY, appellant,

*v.*

EUGENE KELLY, respondent.

1. The act of April 21st, 1876, exempting mortgages by corporations embracing chattels from the requirement of the chattel mortgage act, is prospective only.

[1]2. Under the first section of the act concerning the sale of railroads, canals &c., a purchaser of railroad property and franchises at a judicial sale is empowered to take and hold the purchase in a corporate capacity; and when so held it is liable to be seized and sold for corporation debts only.

3. The title of the purchaser of chattels at a sheriff's sale is not affected by mere irregularities of the sheriff in making the levy or advertising the sale.

4. Sale of goods not at the time in the presence, or within easy access of bidders, or selling *en masse*, instead of in detail, chattels which may properly be separated, are grounds for setting aside such sale at the instance of interested parties.

On appeal from a decree of the chancellor, whose opinion is reported in *Kelly* v. *Boylan, 5 Stew. Eq. 581.*

*Messrs. C. & R. Wayne Parker,* for appellant.

*Mr. John W. Taylor,* for respondent.

The opinion of the court was delivered by

KNAPP, J.

These appeals present a controversy between rival claimants to certain chattels formerly belonging to the Newark and South Orange Horse Railroad Company.

The respondent was complainant in a suit to foreclose a mortgage made to him by James B. Boylan and wife, December 22d, 1874, upon the road, franchises and rolling stock of the said horse railroad company, which complainant had purchased at a foreclosure sale, and had sold to James B. Boylan, the mortgagor, taking the mortgage in suit to secure part of the purchase-money. The appellants were made defendants because they each claimed this personalty by purchase at sheriff's sale. Separate answers were filed. The defendant, Boylan, claimed by purchase under ten executions out of the supreme court and four out of the Essex circuit upon judgments recovered on and after May 3d, 1876, against James B. Boylan. McKenney derived his title by purchase from Wilkinson, Gaddis & Co., who purchased the property at sheriff's sale under an execution issued on their own judgment against the Newark and South Orange Horse Railroad Company, which company, he avers, got title either at the time or after its conveyance to the mortgagor.

Each appellant, in asserting his right to the property, denied the complainant's title as against the judgment creditors under whom they respectively claimed, on the ground that complainant had failed to refile his mortgage, as required by the act respecting chattel mortgages. The real estate under the mortgage has been disposed of, and the personal property has been sold by order of the chancellor, and the proceeds are held in that court for distribution.

A purchaser of chattels at a legally valid sheriff's sale acquires all the title to the property which the defendant in execution had in it, if it be property liable to execution. And it is the law that mere irregularities of the sheriff in levying and advertising goods under an execution cannot affect the title of a purchaser, as he is not required to look into the correctness of such proceedings, but may rely upon the force of the judgment and execution. *Freeman on Ex.* § *339.*

The forty-first section of the mortgage act (*Rev. p. 709*) declares that every chattel mortgage filed in pursuance of the act, "shall cease to be valid as against the creditors of the person making the same, or against purchasers and mortgagees in good

Boylan *v.* Kelly.

faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of said term of one year, a true copy of such mortgage, with a statement exhibiting the interest of the mortgagee in the property therein claimed by him by virtue thereof, shall be again filed in the office of the clerk or register."

The complainant below never refiled his mortgage, so that under the provisions of that section, although the mortgage remained good as between the parties until actually satisfied, from and after the expiration of a year from the date of its original filing it lost its lien upon the mortgaged property as against all then present or subsequent creditors of the mortgagor, whether judgment creditors or creditors at large. The terms of the act descriptive of those creditors against whom the neglected mortgage shall lose effect, are wide and comprehensive. Judgment creditors may make immediate seizure ; and general creditors, on recovering judgment against the owner, may acquire a lien superior to that of the mortgagee.

If, then, either defendant acquired title under a judgment having such superiority of lien, the decree below, holding the complainant entitled to the property through his mortgage, was erroneous.

But the decree maintaining the mortgagee's title was not rested upon the provisions of the section referred to. It was in reliance upon the act of April 21st, 1876 (*Rev. p. 92 § 4*), passed after the year within which the mortgage was required by the section above referred to, to be refiled, and before the recovery of either of the judgments under which the appellants claim to have purchased. The act of 1876 provides " that nothing in any of the laws of this state shall be held to require the filing of record in the clerk's office of any county of any mortgage given by any such corporation conveying the franchises thereof, whereby, also, any chattels then or thereafter to be possessed and acquired by such corporation shall purport to be mortgaged ; provided, that such mortgage shall be duly lodged for registry, according to the laws regulating the conveyance of real estate." Among the corporations referred to in this section are embraced those created

by law upon the purchase of corporate property and franchises under judicial sales thereof.

The chancellor held that the mortgage of the complainant was a corporation mortgage within the meaning of the act referred to, and that the effect of its provisions was to restore the rights which the mortgagee had lost by not refiling his mortgage, and to continue the lien against all creditors who had not acquired, through due process, vested rights in the property. Before this act passed, the mortgagee had lost his lien as against creditors, under then existing laws. It did not provide for the restoration of abandoned encumbrances, and the decree below could only have been made through a construction giving to the statute retrospective effect.

Assuming this mortgage, given as it was by James B. Boylan and wife, to be embraced within the spirit and meaning of the act as a corporation mortgage, the question presented is, whether anything found in the language of the statute justifies us, under settled rules of statutory construction, in giving to it retroactive force. It does not suffice for that result that the act does not exclude the past from its operation. The general rule is that all statutes shall have prospective effect only. *Berdan* v. *Van Riper, 1 Harr. 7; Morris Aqueduct Co.* ads. *Jones, 7 Vr. 206; City of Elizabeth* v. *Hill, 10 Vr. 556; United States* v. *Heth, 3 Cranch 399; Williamson* v. *N. J. S. R. R. Co., 2 Stew. Eq. 311.*

In *United States* v. *Heth,* Judge Patterson says: "Words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or the intention of the legislature cannot otherwise be satisfied." This language was cited with approval by Mr. Justice Depue, speaking for this court in *Williamson* v. *New Jersey Southern R. R. Co., supra,* in which case the act here in question was directly under consideration, and to it these rules were applied. And it was distinctly held that the act did not necessarily require a retrospective construction, and therefore should not receive it. True it is that then the creditors sought to be affected by it had, before the passage of the act, acquired a lien by levy upon the chattels, and this circumstance called forth

Boylan *v.* Kelly.

the further expression "that if the language required another interpretation it could not, on constitutional grounds, disturb rights already vested. But in both these aspects the legislation was viewed, and the construction given was designed to be authoritative, and its construction must here be considered settled, not only on principle but authority.

The case, however, is not disposed of by this conclusion. The claims of the defendants require consideration. They cannot both have title to the property, if either has. It must have been the individual property of Boylan to subject it to seizure under the fourteen judgments, while Wilkinson, Gaddis & Co. purchased it as belonging to the Newark and South Orange Horse Railroad Company.

To determine which class of judgments acquired a lien, it is necessary to see in what character the property was held at the time the levies were made; whether James B. Boylan was the owner or whether it belonged to the railroad company organized by himself and others after his purchase. The first section of the act concerning the sale of railroads, canals &c., passed in 1875 (*Rev. p. 945*), was authority to him as a purchaser of railroad property and franchises, or as one for whose account such purchase was made, to organize a corporation and to take and hold in that capacity the property and corporate franchises.

The chancellor, following the case of *Commonwealth* v. *Central Passenger R. R. Co., 52 Pa. St. 506*, considered the act of purchase by Boylan as creating him a corporation under the statute. The act certainly does confer upon such purchaser the right, at his election, to take and hold and exercise such property and franchises in a corporate capacity, to the full measure in which they were enjoyed by the corporation sold out, with power to organize for its management in the usual mode of controlling such interests. The purchaser, Boylan, left it in no doubt as to the character in which his purchase was designed to be held; for he proceeded in due time to effect a corporate organization, adopting the name of the old company. In doing so the directions of the act were not strictly observed, but sufficiently so to stand against any mere collateral attack. It sufficiently evinced

his purpose to receive and hold the property and rights in a corporate relation, and not as a natural person. Having so determined, the title to it devolved upon the new corporation, and it remained there when seized under the several executions. It was not, therefore, subject to seizure and sale under executions against James B. Boylan; and the appellant, James B. Boylan, Jr., took nothing by his purchase. The judgment of Wilkinson Gaddis & Co. was against the corporation; and the sale under their execution, if legally made, vested the title in the plaintiff in execution; and the appellant, McKenney, acquired it by direct conveyance from them.

But the validity of the sheriff's sale is attacked. It is claimed to be fraudulent and void, so as to give no title to purchasers.

Mere irregularities in the levy and advertisement of chattels, which a purchaser may not know, and of which he is not bound to inquire, cannot of themselves, in the absence of collusion, affect his title. *Freeman on Ex.* § *286.*

The objections here are not confined to irregularities. The sale was made when the goods were neither present nor within easy access of bidders. The entire property was sold in mass, and for a nominal sum. These points the complainant below is entitled to press; for while it is true that the title of purchasers at a judicial sale cannot be attacked collaterally, unless the sale be so clearly void as to convey no title, the rule creates no impediment to the complainant's attack. He, as a claimant to the chattels, is here in a position to make it. *Cummins* v. *Little, 1 C. E. Gr. 48.*

Each of these objections has been made the occasion for setting aside sales on execution. And in some of our sister states the rule is adopted holding sales under such circumstances absolutely void, conveying no title to the purchaser. *Klopp v. Wittmoyer, 43 Pa. St. 219; Bennett's Branch Co. Appeal, 65 Pa. St. 242; Linnendoll* v. *Terhune, 14 Johns. 222; Sheldon* v. *Soper, 14 Johns. 352; Cresson* v. *Stout, 17 Johns. 116; Hermann on Ex.* §§ *216, 217.*

Sales of goods which cannot be seen or examined by bidders or at once delivered to purchasers, must, as a rule, result in a sacrifice of the interests of defendants and creditors. Sales made

by massing quantities of goods and of different sorts, must be attended with like results. Both practices must antagonize any policy for the protection of general creditors of the debtor against fraudulent sales under the forms of law. If a sheriff may, at his discretion, so conduct sales, general creditors are obviously put at the mercy of the debtor and a single creditor. Such sales are violative of well-recognized rules controlling the conduct of official sales; but as circumstances may, and sometimes do, make exceptional cases, the error of the adjudications referred to is in holding sales obnoxious to these objections as absolutely void.

If void, no title passes to the purchaser; and as title rises no higher than its source, innocent purchasers could be in no better condition; while, in fact, the courts protect innocent purchasers. The true rule is that the sales are voidable only by direct application, within reasonable time, to the court whose process has been misused; or, in equity, by those entitled to make the contest.

Inadequacy of consideration is not, in itself, ground for disturbing sales of land or goods, except where it is so gross as to "shock the conscience," but united with other circumstances detrimental to defendants in execution or creditors, so that in the regard of courts they unitedly show constructive fraud, sales have been annulled. *Cummins* v. *Little, supra; Freeman on Ex. § 309.*

The sale here considered has nothing to support it but naked form. The advertisements were not put up in the proper township. The subject of sale was miles away; not a dollar's worth within the observation or easy reach of any who might have seen the sheriff's notices; horse railroad cars, horses, harness and snowplows massed together and sold at a single bid. The complainant had no notice of the sale; nor did he acquire knowledge of it until long afterwards. It could surprise no one that plaintiffs in execution bought it all for one dollar. Nothing but a decent discretion in the bidder suggests the offer of a larger sum. Such a sale, in my judgment, ought not to stand before any tribunal clothed with power to put it out of the way, save in the protection of subsequent *bona fide* purchasers or encumbrancers. If it could challenge countenance or support, creditors outside would have little protection.

22

Setting the sale aside, however, would not give the goods to complainant. The lien of the execution would remain notwithstanding the sheriff's faulty proceeding. Complainant's relief would be to have a resale, and a right to the surplus after paying the judgment creditor. The court of chancery, through its receiver, has assumed control of, and has already sold, the property; and the proceeds are in court as its representative. It will be entirely proper now to dispose of the fund as the result of a resale ordered. The right of the plaintiffs in execution then would be to be paid their judgment. This they have received as the consideration for the transfer of the entire purchase to McKenney, who took it in good faith and for value, and is entitled to just protection. But the evidence shows that he took only as a mortgagee. The transaction was this: McKenney became purchaser under an arrangement with one John Boylan and the judgment creditors, by which McKenney was to advance to said Boylan $10,000, and take the property as security for repayment to him, and Boylan was to pay the judgment. Out of this advance Boylan paid the judgment, and subsequently repaid to McKenney $5,500, leaving a balance due McKenney of $4,500, which sum, he testifies, is the amount of his unsatisfied claim. He will, therefore, be indemnified by the receipt of that sum, with interest. Whatever of this fund creditors or encumbrancers under superior liens are not entitled to, falls to the mortgagee under his mortgage.

The chancellor recognized a right above all other parties to the suit in James B. Boylan, Jr., to ten horses sold by the receiver, and ordered a reference as to their value. From this part of the decree there is no appeal.

The appeal of James B. Boylan, Jr., should be dismissed, with costs.

The decree of the chancellor should be reversed, and the record remitted, with instruction to decree distribution of the fund as follows: After paying to James B. Boylan such sum as he may be found entitled to receive, then payment to the appellant McKenney, of the sum of $4,500, with interest, together with his costs; and payment of the balance to the respondent, Eugene Kelly.

*Decree unanimously reversed.*