ANTHONY SHIMER, Respondent, v. JOHN P. MOSHER, Appellant.

*Sale of property by a tax collector — it must be sold in parcels — it must be exposed to the view of bidders — right of the owner to recover it from a purchaser.*

In this action, brought by the plaintiff to recover for the conversion of a horse and six watches, the defendant claimed title under a sale of the property under a tax warrant issued to collect a tax assessed against the plaintiff's property. The defendant, was at the time the treasurer and tax receiver of the city, and as such officer issued the warrant under which the sale was made. He was not present at the sale, but authorized another person to bid off the property and subsequently received it from him. Upon the trial the evidence showed that the sale was invalid because the property was sold in one parcel, and was not within the view of or exposed to the bidders, and because bids other and higher than that of the defendant were not received.

*Held*, that as the sale was void the officer became a trespasser *ab initio*, and the defendant acquired no title to the property.

That the fact that the plaintiff's tax had been paid and satisfied in law, because the money had been paid into the city treasury and his tax canceled, was of no importance as the defendant did not direct the money to be so used.

Appeal from a judgment, entered upon the decision of the trial court, a jury being waived.

The action was trover for the conversion of one horse and six watches. The plaintiff recovered and their value was assessed at $460. The defendant claimed title under a sale of the property on a tax warrant, issued to collect a tax assessed upon the plaintiff's property.

*E. A. Woodin*, for the appellant.

*Amasa J. Parker*, for the respondent.

Barker, J.:

The plaintiff was the owner of the property at the time it was seized and sold under the tax warrant for the collection of a tax assessed against his property. The court assumed that all the proceedings on the part of the common council of the city of Auburn in making the assessment, and all the subsequent proceedings up to the time of sale were regular and in compliance with the charter.

It was claimed by the plaintiff, that the officer charged, with the

execution of the warrant, in the manner of making the sale, was guilty of a violation of duty: First. By selling the property as one parcel and not in such separate lots as was best calculated to bring the highest price. Second. That the same was not exhibited and exposed to the view of those who attended the sale as bidders. On these questions the trial court found that the sale took place in the plaintiff's barn, where the horse was usually kept, and when sold he was confined in a close box stall adjacent to the room where the sale took place, and the door to which was open only for a moment and that the horse was not in view of the persons who attended the sale and they had no opportunity to examine or inspect the animal; that the watches at the time of the sale were held in the hands or under the arm of the officers; that the property was put up as one lot and cried by the officers as one horse and six watches, and the same were sold and struck off together for the price of $225; that some of the persons present announced that they wanted to buy a horse, and others that they wanted to buy a watch; that the officer struck off the property and declared the same sold immediately after the making of the defendant's bid and before any one else could possibly make another; that the bystanders immediately cried out that that was no sale, and asked the officer to cry the property longer as they would bid more, which he declined to do and turned the property over to the defendant. The evidence fairly tended to support these conclusions.

The evidence also tended to show that the watches were all laid in the bottom of a paper box and were covered with tissue paper; that the box was sixteen inches long and ten inches wide and four inches deep, with a cover thereon and, at the the time of the sale the cover was drawn aside some two inches, but the box was so held that no one could see the watches. It cannot be claimed from the evidence that the watches were removed from the box or any description whatever given of the kind, quality or value of the same. Only two bids were received, the first for ten or fifteen cents and the other was the defendants, to whom the property was struck off. The defendant at the time of the sale was the treasurer and tax receiver for the city, and as such officer issued the warrant under which the sale took place. He did not attend the sale in person, but he authorized another to act as his agent to attend the sale and bid off

the property, and who did receive the same from the hands of the officer and carried it away and delivered it to the defendant.

I think the officer disregarded the rules of law which are applicable to the public sale of property on execution and was guilty of an unpardonable abuse of the process placed in his hands, and for that reason the sale was void and the defendant acquired no title to the property. It is a rule of the common law, that when personal property is sold at a public sale, either judicial or statutory, the same should be in view of the bidders and should be sold in such separate parcels as is best calculated to bring the highest price. In *Stief* v. *Hart* (1 N. Y., 20) it was remarked that a sale of personal property without having it within the view of the bidders for the purpose of ascertaining and estimating its value was an abuse of the process of the court and was condemned by the common law without the aid of a statute regulating the manner of conducting such sales. (See, also, *Linnendoll* v. *Doe*, 14 Johns., 222; *Sheldon* v. *Soper*, Id., 352; *Cresson v. Stout*, 17 id., 116.)

This rule has been uniformly enforced by the courts and has its foundation in the plainest precepts of fairness and public policy. Without such a rule and its strict enforcement it would be in the power of public officers, by connivance with bidders, to perpetrate the most outrageous frauds on those whose property should be seized for sale at public auction. There is no provision in the city charter requiring the officer conducting the sale to observe the statutory rule regulating the sale of personal property on executions, but the manner of the sale as there laid down may well be taken by the courts as a proper one to be observed in making all statutory sales when no specific directions are given, and they should be made in substantial compliance therewith. In making a sale of personal property on an execution, the officer is required to offer the same in such lots and parcels as are calculated to bring the highest price, and the direction is that the same shall not be offered for sale unless it is present and within the view of those attending the sale. (Code, § 1428.) It has been held that this requirement of the statute as to judicial sales, is but an enactment of the common law on the same subject. (*Stief* v. *Hart, supra.*)

The articles of personal property sold were so unlike in their character that no fair and reasonable excuse can be suggested as

justifying their sale in one parcel. It is hardly possible to conceive of a more flagrant violation of the rule or one more likely to work an injury to the owner of the property. We cannot sanction the officer's conduct in selling this property as one parcel, without an utter abandonment of the law so long established by repeated judicial decisions.

Nor were the watches, in my opinion, in view within any reasonable construction of the rule, so that the persons present as bidders could ascertain and estimate their value. It is true the watches were present, but that alone is not sufficient. They were no more exposed to view than they would have been if they had been in the officer's pocket or in his desk a mile away. They were hidden from the view of those present, as the evidence tended to show, and no judge can fairly say that they were within the view of those present within the meaning of the law. We do not intend to say that it was the duty of the officer to part with the actual possession of the property and place the same in the hands of those wishing to bid, for their inspection, or that he was called upon to make any statement as to the make or value of the property. He was not called upon to make representations as to the value of the property, which might or might not be true.

As we are of the opinion that the officer abused the process and disregarded the duties imposed upon him by law, and the sale was void and the officer became a trespasser *ab initio*, the defendant acquired no title to the property. The maxim of the law on this subject is, that if a man abuse an authority given him by law, he becomes a trespasser from the beginning. But when he abuses an authority given him by a party, he is a trespasser only from the time that he violated the license or authority granted him, and his subsequent acts only will amount to a trespass. The rule is well illustrated where the owner of lands distrains a beast, damage feasant, and injures or kills the distress. In such a case the law adjudges that he seized the animal for the purpose of doing the illegal act and he is adjudged a trespasser *ab initio ;* or, in other words, the subsequent illegality shows the party to have contemplated an illegal act all along, so that the whole becomes a trespass. (*Dumont* v. *Smith,* 4 Denio, 319 ; *Allen* v. *Crofoot,* 5 Wend., 507 ; *Van Brunt* v. *Schenck,* 13 Johns., 414 ; *Oxley* v. *Watts,* 1 Term. R., 12 ; *Rock-*

*well* v. *Nearing*, 35 N. Y., 310; *Noyes* v. *Inhabitants of Haverhill*, 11 Cush., 338; *Chitty on Pleadings*, p. 199.)

It is clear that an action of this character could have been maintained against the officer. The law presumes that the defendant was familiar with the law respecting the duty of the officer to sell the property in separate parcels and have the same in view of those present at the sale; and as he was present in the eye of the law, through his agent, and must have known that the officer was disregarding his duty, he gained nothing by his bid and acquired no title to the property.

In *Wood* v. *Moorhouse* (1 Lans., 405), in commenting upon the rights of a purchaser where the sale was made contrary to law, it was remarked that where a sale is made before sunrise or after sunset, when real and personal property are sold together, or personal, consisting of a variety of articles, are sold as one parcel, the purchaser, though a purchaser in good faith, is presumed to know the law, and that such sales are in violation of the law.

The appellant claims that the sale is only voidable; and until it is set aside by a judicial order or decree, on the application of an aggrieved party, the same will be regarded as valid. We have consulted all the cases to which we are referred by the learned counsel for the appellant, and we fail to observe that any of them sustain his position. Most of them are cases where there has been a judicial sale in an action where the aggrieved party is one of the suitors, and he has applied to the power possessed by the court to set aside the sale and order another. In such cases the court has undoubted jurisdiction, and it is a very proper and expeditious way of securing relief from a fraudulent and void or voidable sale.

We do not need to determine in this action whether the payment of the money into the city treasury has the effect to cancel the plaintiff's tax, or whether the defendant in this action may not reclaim the money paid on the bid, for the reason that he acquired no title to the property. (*Noyes* v. *Inhabitants of Haverhill*, *supra.*)

As we have assumed, in the views we have expressed, that all the proceedings in the common council, in levying the tax upon the plaintiff's property, including the issuing of the warrant and the seizure of the property sold, were regular and valid, it is unneces·

sary for us to determine whether the several refusals to find as requested by the defendant, concerning the levy of the tax and the issuing of the warrant, were erroneous or not; and if found erroneous, for that reason to grant a new trial.

The judgment should be affirmed, with costs.

HAIGHT and BRADLEY, JJ., concurred; SMITH, P. J., not sitting.

Judgment affirmed.