FARMERS' BANK OF WASHINGTON COUNTY, Respondent, *v.* HUGH R. COWAN, Sheriff of Washington County, Appellant.

W. mortgaged to M. & Co. certain personal property, including manufactured iron, in the usual form, to wit, a sale with condition that the same should be void on payment of certain promissory notes. In default of such payment the mortgagees were empowered to enter on the premises and take the mortgaged property away and sell it; until such entry and demand, W. to remain in possession, but only as agent for the sole benefit of the mortgagees.

*Held,* that title was in the mortgagees, M. & Co., after default, and the sheriff, under an execution against W., was a trespasser in levying upon and taking such property into his possession.

The possession by W., under the terms of the mortgage cited above, was the possession of M. & Co.

*J. H. Reynolds,* for the respondent.

*J. Gibson,* for the appellant.

CAMPBELL, J.  The answer of the defendant is, in brief, that the property mentioned in the complaint was not the property of the plaintiff, nor was the same in plaintiff's possession, but, on the contrary, the property was owned and possessed by one Benjamin F. Woodruff; that the defendant was sheriff, and sundry executions come into his hands against the said Woodruff and others, and that by one of his deputies, he caused the said property to be levied on and sold as the property of Woodruff. The two issues raised by the answer were: first, was Woodruff owner of the property levied on and, sold? and, if not, second, did the property belong to the plaintiff, or was it in the possession of and under plaintiff's control? To these points the evidence on the trial was directed; and on both issues the jury found against the defendant.

The chattel mortgage given by Woodruff to Mallory, Ingolls and Tibbitts was, I think, in the usual and customary

form. It was a sale of the property with a condition that 'it should be void on the payment of a specified amount of money as shown by certain promissory notes. In case of a default in payment of any part of the money, the mortgagees were empowered to enter on the premises where the property was, and to carry away and sell the same; but until such entry and demand made, Woodruff was to remain in possession of the property, and in the full and free enjoyment of the same, but with the further condition that, until such demand made, such possession was to be that of an agent for the sole benefit of his principal the mortgagees. On looking at the notes which this mortgage was given to secure, it is seen that the largest note, and being one for over seven thousand dollars, was made payable after one day, so that the default probably occurred almost immediately on execution, whereby the title at once vested in the mortgagees. But though the title vested there was not an absolute forfeiture. There was a right in equity still remaining in Woodruff to redeem. This, after default, was all the interest he had in the property, and was all in fact he could transfer even to a *bona fide* purchaser for full value—though having the property in possession he might transfer such possession together with his right of redemption. But the mortgagees could at any time take the property out of the possession of such *bona fide* purchasers and sell the same. In case of sale if there was a surplus after paying the mortgage debts, that would belong to the mortgagor or his vendee or assignees. But after default, until such redemption or sale, the title is in the mortgagees. The interest of the mortgagor is identical, whether in case of redemption or sale, it is only what remains after the mortgage debt is paid, and that is all which the sheriff could levy on and sell. But in this case, as may fairly be inferred, the furnace was running constantly, and, the mortgage having been given more than a year before the levy, it is not probable that any of the iron mortgaged remained on the premises and formed a part of that now in controversy. If any such iron remained, the sheriff could not sell it absolutely under executions against Woodruff. He

could only sell Woodruff's interest, and the surplus remaining after payment of the mortgage.

But, simultaneously with the execution of the chattel mortgage, a separate agreement was entered into between the mortgagor and mortgagee, by which it was further stipulated that the mortgagor might remain in possession and carry on the furnace as the agent of the mortgagees, the mortgagees to furnish all the funds, and all the iron made was to belong to the mortgagees. Under this arrangement, the furnace had been carried on for more than a year before the arrangement made between the mortgagees and the plaintiff in this suit for the delivery of the iron in controversy. Certainly, as between the parties, such an arrangement as made between Mallory & Co. and Woodruff, would be legal, and under it the title to the manufactured iron would be in Mallory & Co., and not in Woodruff. Though the proceeds of the sales when received by Mallory & Co., were to be applied on the indebtedness of Woodruff to them, that would not affect the question of title to the property. Woodruff could sell the property as agent for Mallory & Co., but as between him and that firm he was clearly not the owner. As against them he could have no better title or claim to the manufactured iron than a stranger to the original transaction could have had, in the same position as agent, that is, so long as the expenses of running the furnace and the original indebtedness to Mallory & Co. remained unpaid. The creditors of Woodruff could only assail the arrangements between him and Mallory & Co., on the ground that they were fraudulent in fact as against them. This, the jury, on a full and fair submission of all the facts to them, have negatived. They found in effect that the iron in question belonged to Mallory & Co. and not to Woodruff.

If the iron was the property of Mallory & Co., then there can be, I apprehend, no doubt or difficulty as to the other branch of the case.

By the agreement between the plaintiff and Mallory & Co., the iron was to be delivered on the dock. It was so done. As Woodruff had no title to the property, the previ-

ous levy under execution against him in no way affected Mallory & Co.'s rights. The plaintiff was notified, and accepted the iron. The weight and bulk of the iron was such that there could be no manual delivery. It was not necessary to go on the dock and make a formal proclamation. As against a trespasser—for such the sheriff was if Woodruff had no title—it is very clear that the possession of the plaintiff was sufficient.

There were numerous exceptions on the trial, but they are all so fully and correctly considered in the court below that I do not think it necessary to go over them.

I think this judgment should be affirmed.

DAVIES, WRIGHT, BROWN, and DAVIS, JJ., concurring,

Judgment affirmed.