# N. Y. SUPERIOR COURT.

MARY C. PORTER, executrix of the last will, &c., of GILES
W. PORTER, deceased, plaintiff and respondent, agt.
ELEAZER PARMLY, defendant and appellant.

A *mortgage of porsonal chattels* is a sale on condition. Under it the legal title to the
property is vested in the mortgagee, subject to the right of the mortgagor to per-
form the condition.

Upon breach of the condition of a chattel mortgage, the legal title becomes absolute
in the mortgagee, leaving a mere equity in the mortgagor. The mortgagee may
thereupon take possession of the property, and so far as the legal rights of the
parties are concerned, he may thenceforth treat it as his own. But if he pursues
such a course he waives his claim for any deficiency that might otherwise arise.

If the mortgagee, in addition to his legal rights, desires to extinguish the mort-
gagor's equity, after forfeiture, he must make a fair and *bona fide* sale under the
power contained in the mortgage, or have recourse to actual foreclosure of the
equity by judicial proceedings.

All legal claim of the mortgagor being gone after forfeiture, he cannot sue for the
property, nor sell it, or give another valid mortgage or lien upon it. Nor, after
forfeiture, is the mortgagee bound, at law, to receive the amount of the mortgage
debt and restore the property to the mortgagor.

While the mortgagor retains possession, before default, he may sell and deliver the
property, and the purchaser takes all the interest the mortgagor had thereto, and
holds it subject to the mortgage. Such purchaser may again, before default, sell
and deliver to another with the like effect, and in such case the remedy of the
mortgagee, upon maturity of the mortgage debt, is to follow the property and
recover it from the possession of the last purchaser.

If after default, the mortgagor is allowed to remain in possession, he may transfer
such possession together with his equity of redemption. That is all the interest
he has in the property, and all he can transfer, even to a *bona fide* purchaser for
full value. But the mortgagee may, at any time, take the property out of the
possession of such *bona fide* purchaser.

Until default in the conditional payment, the mortgagor has such a possessory right
for a definite period in the chattels mortgaged against the mortgagee, coupled
with the right of redemption, as is liable to levy and sale on execution. In such
case the purchaser at the sale on the execution takes the property subject to the
due mortgage, and acquires with it, a right to redeem it by payment of the amount
on the mortgage.

But after the mortgagee has acquired an absolute title to the property by reason of
the mortgagor's default there is not left such a possessory right or interest in the
mortgagor as is liable to be sold under an execution against him, and the rule is

the same though the mortgagor is allowed to remain in possession after the default. In such case his possession is merely by the sufferance and as the bailee of the mortgagee.

The mortgagee's rights as against creditors thus defined, may still become impaired and perhaps lost by a non-compliance with the statutory requirements against fraudulent conveyances and mortgages.

The act of 1833 requiring chattel mortgages to be filed, does not repeal the statute as to fraudulent conveyances (2 *R. S.*, 136), but imposes on the mortgagee, who is willing that the mortgaged property should remain in the possession of the mortgagor, the duty of giving notice of the existence and continuance of his mortgage, by having the same filed and refiled, as provided for in the act.

Whether a *refiling* of the mortgage, as to creditors of the mortgagor is wholly unnecessary *after default—Query ?*

But where, as in this case, an actual *change of possession* has taken place, after default, by the mortgagee delivering possession of the property to a partner of the mortgagor (without removal) with the consent of the latter, it cannot be deemed fraudulent against a creditor of the mortgagor, (who knew of the mortgage) whose demand did not become merged into a judgment until after such change of possession, although after the expiration of one year from the filing of the mortgage and no refiling had taken place.

A sale of the property on such judgment and execution set aside, on the ground that the mortgagor had then no interest in the property subject to levy and sale, the title of the property was absolutely vested in the mortgagee.

*General Term, March,* 1872

*Before* MONELL, *P. J.,* FREEDMAN *and* CURTIS, *JJ.*

APPEAL from judgment entered upon the report of a referee.

The action was brought by Giles W. Porter against the defendant, for the wrongful seizure and sale of personal property, the alleged property of said Porter.

The defendant interposed a general denial.

During the pendency of the action, Giles W. Porter died, and the action was continued by and in the name of Mary C. Porter, acting executrix of the last will and testament of said Giles W. Porter, as plaintiff.

The issues were referred, by consent of parties, to a referee to hear and determine the same, who found the following facts and conclusions of law :

FACTS, *First.* That for some time prior to June 1, 1850, the defendant in this action, was the owner of certain furniture then being in a certain hotel, situated in the city of New York, known as Rathbun's Hotel; such furniture then

being in the possession of one Benjamin Rathbun and John F. Porter, who were then conducting the business of keeping said hotel as partners, and such furniture being part of the equipment of said hotel and used in conducting said business.

*Second.* That at some time prior to the 1st day of June, 1850, an agreement was made between the defendant and the said John F. Porter, by which the said defendant sold to said Porter, and the said Porter purchased of said defendant the said furniture above mentioned for the sum of eight thousand seven hundred and fifty-seven dollars and four cents, the said sum to be secured to and to be paid to said defendant by the said Porter, by executing and delivering to said defendant the bond of said Porter conditioned for the payment of said sum on demand, and also by a mortgage on said furniture, to be executed by said Porter to the defendant.

*That.* That said agreement was carried out on, or about the 1st day of June, 1850, by the execution and delivery by said John F. Porter of his bond conditioned for the payment of $8,757 04, to the defendant on demand, with interest from 1st May, 1850, and by the execution and delivery to the defendant of a mortgage on said furniture, which expressed that it was on condition that the same should be void if said Porter should pay the amount secured by said bond on demand with interest as aforesaid, and also the sum of fifty-five hundred dollars on demand, with interest, which mortgage contained a power of sale in case of default in payment, and a provision that, until default, said Porter was to remain in possession of the property therein described; which said bond and mortgage were respectively dated on June 1st, 1850, and which mortgage was duly filed on the 15th day of June, 1850, in the office of the register of the city and county of New York.

*Fourth.* That on the same day of the execution of said bond and mortgage, and also some time in the month of April, 1851, the amount mentioned in and secured by said

bond was demanded of the said Porter, and payment thereof required, and payment thereof required, and possession of the property described in said mortgage was also demanded, but on neither of said occasions was said amount paid. That on one of said occasions it was agreed between the said defendant and said Porter, that the said Rathbun should be and remain in possession of said property for the defendant—he, the defendant, stating on that occasion, that he would not trust said Porter with the property.

*Fifth.* That said Benjamin Rathbun and John F. Porter, continued to be partners engaged in carrying on the business of keeping said hotel from the time of the execution of said mortgage up to the time of the sale under said mortgage hereinafter mentioned, and that said property so mortgaged continued to remain in said hotel as the equipment and furniture thereof, and to be used in the carrying on such partnership business during the same period.

*Sixth.* That the said mortgage was not refiled in the office of the register aforesaid within thirty days next preceding the expiration of one year from the first filing thereof, but was so filed on the 3d day of July, 1851.

*Seventh.* That on the 2d day of July, 1851, the said John F. Porter, by his statement made, signed, and verified by him, confessed a judgment in favor of Giles W. Porter, assignee of Porter & Ballard, for the sum of $13,060 82 which statement was filed in the office of the clerk of the city and county of New York, and judgment was entered thereon in the supreme court for said amount on the last mentioned day.

*Eighth.* That on the second day of July, 1851, an execution against property was issued on said judgment and delivered to the sheriff of the city and county of New York. By virtue of which execution the said sheriff levied upon, and afterwards and on the 21st day of July, 1851, sold at public vendue to the said Giles W. Porter all the right, title and interest which the said John F. Porter had on the 2d day of

July, 1851, or at any time afterwards, of, in and to all the furniture, goods and chattels on the premises known as Rathbun's Hotel in Broadway, in the city of New York, and all interest in such property, which the said sheriff was authorized to sell, and executed and delivered to said Giles W. Porter, a bill of sale therefor; that the price at which the same was sold was the sum of $6,000, but that no money was paid on account thereof, said amount, less sheriff's fees, being credited on the execution. That on said sale, said right, title and interest was put up and sold as one lot and not in detached parcels, and that said sale took place in or upon some portion of said hotel, where the property was situated, the same being distributed throughout various rooms in said hotel, in the customary places for use.

*Ninth.* That before said confession of judgment, said Giles W. Porter knew of the existence of the mortgage hereinbefore mentioned.

*Tenth.* That the said defendant did, by an instrument in writing endorsed on said mortgage and bearing date the 1st day of July, 1851, make, constitute and appoint Abraham T. Hillyer his true and lawful attorney for him and in his name to take possession of the goods and chattels and property mortgaged and described in said mortgage, and in the inventory thereunto annexed, and to sell the same by virtue of the power of sale therein contained, and to take all proper ways and means to foreclose said mortgage and collect the moneys due thereon, and confirming all he might lawfully do by virtue thereof; and thereupon said mortgage with said instrument indorsed thereon was delivered to said Hillyer. That the said Hillyer, at that time, was one of the deputies of the sheriff of the city and county of New York, and the same who made the sale on the execution hereinbefore mentioned.

*Eleventh.* That no possession was taken by said Hillyer, under the power indorsed on said mortgage until after the 2d day of July, 1851, but that on some day subsequent

thereto he did take possession under said mortgage of all the property mentioned in said mortgage then in said hotel, and also did without authority, direction or consent from the defendant, take possession of other property in said hotel not covered by or included in said mortgage, and on the 6th day of August, 1851, he caused all of said property so taken possession of by him to be exposed for sale at public auction, and the said public sale of said property was commenced on that day, and was continued for some days thereafter, until the whole of the said property was sold. That after said sale, said property was removed by the purchasers, and the proceeds were received by said Abraham T. Hillyer. That the defendant did not, in any manner, authorize, direct or ratify the sale by said Hillyer, of any property other than such as was covered by said mortgage.

*Twelfth.* That the value of the property mentioned in said mortgage and so sold by the said Hillyer, was the sum of eleven thousand and eighty-five 45-100 dollars, and that the interest on said sum from the 15th day of August, 1851, to the date of this, my report, is the sum of fifteen thousand three hundred and forty-one dollars and fifty-two cents ($15,341. 52).

*Thirteenth.* That said Giles W. Porter departed this life some time in the year 1859, leaving a last will and testament, which was duly admitted to probate by the surrogate of the proper county, and letters testamentary issued thereon to the plaintiff, the only executor named in said will who qualified.

And from the said facts so found by me, I have arrived at and do hereby report the following as my conclusions of law:

*First.* That as at the time the said agreement between the defendant and John F. Porter and Benjamin Rathbun, in the fourth conclusion of fact mentioned was entered into, the said John F. Porter and Benjamin Rathbun were partners, and as the mortgaged property at that time was used in

carrying on such partnership business, and as such partnership and such use of said mortgaged property continued after such agreement was made, there was not, in judgment of law, an actual change of possession of the mortgaged property.

*Second.* That although payment of the amount secured by said mortgage was demanded and refused, yet as there was no change of possession of said mortgaged property, the title to the same was not absolute at law in the defendant after the expiration of one year from the filing thereof as against the creditors of John F. Porter.

*Third.* That the mortgage executed by the said John F. Porter, to the defendant not having been refiled within the thirty days next preceding the expiration of one year from the time of the original filing, the same ceased to be valid as against the creditors of John F. Porter, and was on the 2d day of July, 1851, void, and of no effect as against Giles W. Porter, assignee of Porter & Ballard, a creditor in whose favor judgment was, on that day, entered against John F. Porter, and execution issued thereon.

*Fourth.* That although at the time of the sale to Giles F. Porter, upon the execution of said judgment, the said mortgage was valid and subsisting as between the defendant and John F. Porter, and although said sale was expressly made of the right, title and interest of John F. Porter in the property, yet the said Giles W. Porter was not, by reason of his purchase on said sale, estopped from setting up the invalidity of such mortgage as against him.

*Fifth.* That as the mortgage held by the defendant had ceased to be valid at the time of sale as against Giles W. Porter, he did, by the sale to him of the right title and interest of John F. Porter in the property, acquire the title to and become the absolute owner of the mortgaged property itself, free and clear, and discharged of any lien of the defendant's mortgage.

*Sixth.* That the sheriff, in making such sale, complied with all the requirements of law in relation to sales of per-

sonal property on execution, and that the sale of the right, title and interest was properly made in one parcel.

*Seventh.* That the defendant has no right to object to the manner in which said sale was made, or as to any of the proceedings connected therewith.

*Eighth.* That the defendant became liable to Giles W. Porter in damages, for the acts of Abraham T. Hillyer, in taking possession of, selling and disposing of the property mentioned in said mortgage, but he did not become liable for his acts, in taking possession, selling or disposing of any property not mentioned in said mortgage.

*Ninth.* That the measure of damages to be recovered in this action is the value of the property described in said mortgage so sold and disposed of by said Hillyer, with interest thereon from the time of sale.

*Tenth.* That after the death of Giles W. Porter and the issuing of letters testamentary on the will, the right of action possessed by Giles W. Porter in his lifetime, became vested in the present plaintiff and this action was properly continued in her name.

*Eleventh.* That the plaintiff in this action is entitled to judgment against the defendant for the sum of eleven thousand and eighty-five 45-100 dollars, with interest thereon, from August 15, 1851, to the date of this report—being the sum of fifteen thousand three hundred and forty-one dollars and fifty-two cents, making in the whole the sum of twenty-six thousand four hundred and twenty-seven dollars and twenty-two cents ($26,427 22), besides the costs of this action.

Judgment was entered upon said report in favor of the plaintiff against the defendant for $28,322 23-100, damages and costs, and the defendant appealed from such judgment.

MARSH & WALLIS, *for appellant.*
A. R. DYETT *for respondent.*

*By the court,* FREEDMAN, *J.*—Although the evidence in this case is amply sufficient to sustain the findings of fact made by the learned referee, who tried the cause, I cannot see how, upon the facts as found, his conclusions of law, with the exception of the sixth, seventh and tenth, and the judgment founded thereon, can be upheld.

In *Stoddard* agt. *Denison,* (2 *Sweeny,* 54), we held that a mortgage of personal chattels is a sale on condition. Under it the legal title to the chattel is vested in the mortgagee, subject to the right of the mortgagor to perform the condition. Until default there is no doubt of the mortgagor's right to perform and, upon performance, to reinvest himself with the legal title.

Upon breach of the condition of a chattel mortgage, valid in its inception, the legal title becomes absolute in the mortgagee leaving a mere equity in the mortgagor. The mortgagee may thereupon take possession of the property, and, so far as the legal rights of the parties are concerned, he may thenceforth treat it as his own, and squander, destroy it or give it away. By pursuing this course, he waives his claim for any deficiency that might otherwise arise.

But, whenever, in addition to his legal rights, the mortgagee desires to extinguish the equity remaining in the mortgagor after forfeiture, then and not until then, must he make a fair and *bona fide* sale under the power contained in the mortgage or have recourse to actual foreclosure of the equity by judicial proceedings.

All legal claim of the mortgagor being gone after forfeiture, he cannot sue for the property, nor sell it, or give another valid mortgage or lien upon it. Nor, after forfeiture, is the mortgagee bound at law to receive the amount of the mortgage debt, and restore the property to the mortgagor (*Charter* agt. *Stevens,* 3 *Denio,* 33 ; *Hulsen* agt. *Walter,* 34 *How.,* 385).

While the mortgagor retains possession, before default, he may sell and deliver the property, and the purchaser takes

all the interest the mortgagor had thereto, and holds it sub ject to the mortgage. Such purchaser may again, before default, sell and deliver to another with the like effect, and in such case the remedy of the mortgagee, upon maturity of the mortgage debt, is to follow the property and recover it from the possession of the last purchaser (*Hathaway* agt. *Brayman,* 42 *N. Y.,* [3 *Hand,*] 322).

If, after default, the mortgagor is allowed to remain in possession, he may transfer such possession together with his equity of redemption. That is all the interest he has in the property, and all he can transfer even to a *bona fide* purchaser for full value. But the mortgagee may, at any time, take the property out of the possession of such *bona fide* purchaser. In case of sale by the mortgagee, to foreclose the equity of redemption, if there be a surplus after paying the mortgage debt, that would belong to the mortgagor or his vendee or assignee. But, after default and until such sale or redemption, the title is in the mortgagee (*Farmers' Bank of Washington Co.* agt. *Cowan,* 2 *Keyes,* 218).

Until a chattel mortgage becomes an absolute bill of sale by the non-performance of the condition contained therein, the mortgagor usually retains not only the possession, but has such a possessory right for a definite period in the chattels mortgaged, against the mortgagee, coupled with the right of redemption, as is liable to levy and sale on execution. In such case the purchaser, at the sale on execution, takes the property subject to the mortgage, and acquires with it a right to redeem it by payment of the amount due on the mortgage (*Hull* agt. *Carnley,* 1 *Kern.,* 501; *Hull* agt. *Carnley, executrix* 17, *N. Y.,* 202; *Goulett* agt. *Asseler,* 22 *N. Y.,* 225; *Manning* agt. *Monahan,* 23 *N. Y.,* 539).

But, after the mortgagee has acquired an absolute title to the property, by reason of the mortgagor's default, there is not left such a possessory right or interest in the mortgagor as is liable to be sold under an execution against him (*Baltes* agt. *Ripp,* 3 *Keyes,* 210), and the rule is the same though

the mortgagor is allowed to remain in possession after the default. In such case his possession is merely by the sufferance and as the bailee of the mortgagee (*Champlin* agt. *Grant*, 39 *Barb.*, 606 ; *Stewart* agt. *Slater*, 6 *Duer*, 99).

These rights of the mortgagee, as defined and laid down, are affected, however, and may become impaired and, in some instances, even wholly lost as against creditors, by reason of the mortgagee's failure to comply with certain statutory requirements enacted for the protection of the creditors of the mortgagor against fraudulent conveyances and mortgages.

Under the act concerning fraudulent conveyances and contracts (2 *R. S.*, 136 ; 3 *Rev. Stat.*, 5th ed., 222), every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, is to be presumed fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchaser in good faith, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned ; and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers.

The act of 1833, introduced an additional feature into the law, by providing that every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followd by an actual and continued change of possession of the things mortgaged, should be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, be filed as required by said act—such filing in the city of New York, to be in the office

of the register. The act further provides, that every mortgage filed in pursuance thereof shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof; unless within thirty days next preceding the expiration of the said term of one year, a true copy of such mortgagee, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk or register aforesaid, of the town or city where the mortgagor shall then reside (*Laws of* 1833, *chapter* 279, §§ 1, 2, 3).

I agree with the learned referee, that the act last mentioned does not repeal the statute as to fraudulent conveyances above referred to, but imposes on the mortgagee, who is willing that the mortgaged property should remain in the possession of the mortgagor, the duty of giving notice of the existence and continuance of his mortgage, by having the same filed and refiled, as provided for in the act. The object of this act was to create an additional guard against fraud or collusion between the mortgagor and mortgagee, and the presumption of fraud created by the statute, as against a mortgagee of chattels where its execution was not followed by an immediate delivery and an actual and continued change of possession was not in any way affected by the act of 1833.

The filing of a mortgage, does not, of itself, excuse the want of possession of the property mortgaged, but by its means the mortgagee is placed in a position which entitled him to show, as against creditors and subsequent mortgagees and purchasers, that the mortgage was given in good faith, without intent to hinder or defraud creditors.

Such filing is made essential in all cases where there is not an immediate delivery and actual change of possession, and in such cases every mortgage not so filed is declared by the act to be absolutely void against creditors, whose rights,

in such cases, date from the delivery of the execution to the sheriff, and against subsequent mortgagees or purchasers in good faith (*Hale* agt. *Sweet*, 40 *N. Y.*, [1 *Hand*], 97).

: Now, in the present case, it is fully conceded, that the chattel mortgage was a valid one in its inception, that it was duly filed before the rights of any creditor attached, and that payment of the amount secured by it and possession of the furniture were duly demanded within the first year. But the referee holds that it ceased to be valid as against the plaintiff, representing a creditor of the mortgagor, because not refiled within thirty days next preceding the expiration of one year from the first filing.

That this would be so, in case no default had accrued in the performance of the condition, is too clear for argument. But it seems to me, that it may well be doubted, whether that provision applies after default. As above shown, the title of the mortgagee becomes absolute at law, upon default; not only against the mortgagor but also his creditors, and the mortgage, which has fulfilled its object, is thereupon turned into an absolute bill of sale. The claim, therefore, that such absolute title, once acquired, can be made to cease, by operation of law and without actual fraud, to have any value whatever after the expiration of one year, against the creditors of the mortgagor then existing, appears not only illogical, but unreasonable. Before it can be allowed, the language of the statute must be found to be so clear and imperative as to leave no choice. In *Newell* agt. *Warren*, (44 *N. Y.*, [5 *Hand*], 244), the commission of appeals held that, under the statute referred to, it was unnecessary to require more than the legislature did, and that consequently a mortgage once refiled at the end of the first year continues valid without further refiling in subsequent years. And in *Hulsen* agt. *Walter*, (34 *How.*, 385), VAN VORST, *J.* intimated that a refiling, after default, may in some instances even be improper. He says: A person ignorant that a forfeiture had occurred, and who had acted upon such refiling

as an acknowledgment on the part of the mortgagee, that his title had not become absolute, might make a claim on that ground.

Now, from the language of the statute, it is by no means clear, that the requirement as to a refiling is intended to apply to a chattel mortgage after forfeiture. The cases of *Ely* agt. *Carnley*, (19 *N. Y.*, 496), and *Levin* agt. *Russel*, (42 *N. Y.*, [3 *Hand*], 251), do not go to the full extent of deciding authoritatively, that it does so apply. In the first case, the mortgage was payable on demand, and no demand had been made at the time of the delivery by the creditor of the execution to the sheriff. Consequently a refiling was absolutely necessary. The additional remark made by the learned justice, who delivered the opinion of the court, that when the title to the property has absolutely vested in the mortgagee, by the mortgagor's failure to perform the condition, a refiling is necessary to preserve the title of the mortgagee, when there has been no change of possession, is merely the expression of a judicial opinion, although entitled, as such, to great respect. And even that is followed up by the further qualification : Once a mortgage, it so continues for the purpose of filing, until the rights of the parties have been changed by some new act or contract in relation to the property. In the second case, more than a year had expired after the filing of plaintiff's mortgage, before he took possession, and no statement exhibiting the interest claimed by him had been filed at the expiration of the first year ; but plaintiff took possession before the lien of any creditor attached. Upon these facts it was held by the court (the same learned judge who had delivered the opinion in the case of *Ely* agt. *Carnley*, 19 *N. Y.*, 496, delivering the opinion in this case), that the omission of the plaintiff to file the statement of his interest in the property covered by the mortgage as required by the statute, to preserve his lien against the creditors of the mortgagor, was obviated by the proofs showing that the plaintiff took possession of the property by virtue of his mort-

gage in the lifetime of the mortgagor and before the lien of any creditor had attached, and that he retained such possession until the property was taken from him by the defendant.

If this last decision is to be strictly followed, as an authority in all cases which come within the language of it, the following question still remains unanswered, viz.: How can a mortgagee, who has omitted to refile, take possession after the expiration of one year from the original filing, and maintain such possession against the creditors of the mortgagor, who levy upon it the day after he has taken possession, if his mortgage, by reason of non-compliance with the statute, had already ceased, by force of the statute, to have any validity whatever against such creditors?

In *Dillingham* agt. *Bolt*, (37 *N. Y.*, 198), to which I have been referred, there is no evidence of any default, and the decision made is an authority only upon the point that the removal of the mortgagor from the state within the year, makes compliance with that provision of the statute, which requires the refiling to be made in the office of the clerk of the town where the mortgagor then resides, impossible, and that, upon such contingency, the mortgagee must, as against the creditors and purchasers named in the section, take advantage of his mortgage within the year, or lose the benefit of it as against them.

But as I do not find it necessary to the decision of this case to go to the extent of holding that such refiling is wholly unnecessary, after default, I shall refrain from placing my decision upon that ground. There is an abundance of authority to sustain the proposition that such refiling is unnecessary for the preservation of the mortgagee's rights acquired upon the mortgagor's default, whenever an actual change of possession of the property has taken place, or the rights of the parties have been changed by some new act or contract in relation to the property, which would render a refiling an idle ceremony. That such a change has taken

place in this case, appears not only in evidence, but is established by the findings of the referee. The testimony shows, and the referee substantially found, as matters of fact, that after the execution of the mortgage, a demand was made on Porter, the mortgagor, for payment of the amount secured by it, and possession of the furniture demanded, that the amount was not paid, and that thereupon, as the mortgagee would not trust Porter with the property Benjamin Rathbun was placed in possession of the property for the mortgagee, with the mortgagor's consent, and that he continued in such possession until the mortgage sale. This worked all the delivery and change of possession of which the property was capable, and was *prima facie*, a compliance with the statute concerning fraudulent conveyances. The mortgagee was not bound to remove it, for, having the absolute title, he had a right to hire it out, with or without compensation. Nor was he bound to make the change more conspicuous by affixing a written or printed notice of his right of ownership to each article of furniture. If the mortgage was valid in its inception and the original condition, whereby the mortgagor was allowed to remain in possession until default, not fraudulent against the mortgagor's creditors, the new arrangement made between the parties upon the occurrence of the default cannot, as matter of law, be deemed fraudulent against a creditor of the mortgagor, whose demand did not become merged into judgment until after the expiration of one year from the filing of the mortgage.

The whole transaction between mortgagor and mortgagee may, in such case, be attacked by such creditor, as seems to have been done in the case of the *Farmers' Bank of Washington County* agt. *Cowan*, (2 *Keyes*, 217, 219), upon the ground that it was entered into or carried out with intent to hinder, delay or defraud the mortgagor's creditors, which is a question of fact.

But as the referee in this case has recognized the good faith of the parties to the original transaction, and failed to

find, as matter of fact, that such transaction was entered into or carried out with a fraudulent intent, and was for that reason fraudulent against creditors, he was not justified to adjudge as matter of law, that the arrangement entered into between the parties upon default, was fraudulent and void against the original plaintiff in this action, who, it appears, was not mislead thereby, and at the time of the recovery of his judgment had full notice of said mortgage. The mere fact that Rathbun and Porter were copartners, cannot be made to work such a result. It is only one of the many circumstances that may be looked at and considered on the determination of the question of actual fraud.

Upon the proof, and the facts as found, John J. Porter, at the time of the confession of judgment and of the sale on execution, had no interest in the property subject to levy and sale; the title to the property was absolutely vested in the defendant, Parmly; and the sheriff's sale of the right, title and interest of John F. Porter in said property, conveyed nothing to the purchaser.

The judgment must be reversed, the order of reference vacated, and a new trial ordered with costs to the appellant to abide the event.

MONELL and CURTIS, *JJ.* concurred.