By the Court.—Freedman, J.
Although the evidence in this case is amply sufficient to sustain the findings of fact made by the learned referee who tried the cause, I cannot see how, upon the facts as found, his conclusions of law, with the exception of the sixth, seventh, and tenth, and the judgment founded thereon, can be upheld.
In Stoddard v. Denison, 2 Sweeny, 54, we held that a mortgage of personal chattels is a sale on condition. *407 Under it the legal title to the chattel is vested in the mortgagee, subject to the right of the mortgagor to perform the condition. Until default there is no doubt of the mortgagor’s right to perform, and, upon performance, to re-invest himself with the legal title.
Upon breach of the condition of a chattel mortgage, valid in its inception, the legal title becomes absolute in the mortgagee, leaving a mere equity in the mortgagor. The mortgagee may thereupon take possession of the property, and, so far as the legal rights of the parties are concerned, he may thenceforth treat it as his own, and squander, destroy it, or give it away. By pursuing this course he waives his claim for any deficiency that might otherwise arise.
But, whenever, in addition to his legal rights, the mortgagee desires to extinguish the equity remaining in the mortgagor after forfeiture, then, and not until then, must he make a fair and bona fide sale under the power contained in the mortgage or have recourse to actual foreclosure of the equity by judicial proceedings.
All legal claim of the mortgagor being gone, after forfeiture, he cannot sue for the property, nor sell it, > or give another valid mortgage or lien upon it. Nor, after forfeiture, is the mortgagee bound, at law, to receive the amount of the mortgage debt, and restore the property to the mortgagor (Charter v. Stevens, 3 Denio, 33; Hulsen v. Walter, 34 How. 385).
While the mortgagor retains possession, before default, he may sell and deliver the property, and the purchaser takes all the interest the mortgagor had thereto, and holds it subject to the mortgage. Such purchaser may again, before default, sell and deliver to another with the like effect, and in such case the remedy of the mortgagee, upon maturity of the mortgage debt, is to follow the property and recover it from the possession of the last purchaser (Hathaway v. Brayman, 42 N. Y. [3 Hand] 322).
*408 If, after default, the mortgagor is allowed to remain in possession, he may transfer such possession, together with his equity of redemption. That is all the interest he has in the property, and all he can transfer, even to a tona fide purchaser for full value. But the mortgagee may, at any time take the property out of the possession of such tona fide purchaser. In case of sale by the mortgagee, to foreclose the equity of redemption, if there be a surplus after paying the mortgage debt, that would belong to the mortgagor or his vendee or assignee. But, after default,, and until such sale or redemption, the title is in the mortgagee (Farmers’ Bank of Washington Co. v. Cowan, 2 Keyes, 218).
Until a chattel mortgage becomes an absolute bill of sale by the non-performance of the condition contained therein, the mortgagor usually retains not only the possession, but has such a. possessory right for a definite period in the chattels mortgaged, against the ' mortgagee, coupled with the right of redemption, as is liable to levy and sale on execution. In such case the purchaser, at the sale on execution, takes the property subject to the mortgage, and acquires, with it a right to redeem it by payment of the amount due on the mortgage (Hull v. Carnley, 1 Kern. 501; Hull v. Carnley, Executrix, 17 N. Y. 202 ; Goulet v. Asseler, 22 N. Y. 225 ; Manning v. Monaghan, 23 N. Y. 539).
But, after the mortgagee has acquired an absolute title to the property, by reason of the mortgagor’s default, there is not left such a possessory right or 4 interest in the mortgagor as is liable to be sold under an execution against him (Baltes v. Ripp, 3 Keyes, 210); and the rule is the same though the mortgagor is allowed to remain in possession after the default. In such case his. possession is merely by the sufferance, and as the bailee, of the mortgagee (Champlin v. Grant, 39 Bart. 606 ; Stewart v. Slater, 6 Duer, 99).
These rights of the mortgagee; as defined and laid *409 down, are affected, however, and may become impaired and, in some instances, even wholly lost as against creditors, by reason of the mortgagee’s failure to comply with certain statutory requirements enacted for the. protection of the creditors of the mortgagor against fraudulent conveyances and mortgages.
Under the act concerning fraudulent conveyances and contracts (2 Rev. Stat. 136; 3 Id. 5 ed. 222), every sale made by a vendor, of goods .and chattels in his possession or under ‘his .control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, is to be presumed fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned; and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers.
The act of 1833 introduced an additional feature into the law, by providing that every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, should be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, be filed as required by said act—such • filing in the city of Hew York to be in the office of the register. The act further provides that every mortgage filed in pursuance thereof shall cease to be valid as against the creditors of the *410 person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of the said term of one year a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk or register aforesaid, of the town or city where the mortgagor shall then reside (Laws of 1833, ch. 379, §§ 1, 2, 3).
I agree with the learned referee that the act last mentioned does not repeal the statute as to fraudulent conveyances above referred to, but imposes on the mortgagee, who is willing that the mortgaged property should remain in the possession of the mortgagor, the duty of giving notice of the existence and continuance of his mortgage, by having the same filed and refiled, as provided for in the act. The object of this act was to create an additional guard against fraud or collusion between the mortgagor and mortgagee; and the presumption of fraud created by the statute, as against a mortgagee of chattels, where its execution was not followed by an immediate delivery and an actual and continued change of possession, was not in any way affected by the act of 1833.
The filing of a mortgage does not of itself excuse the want of possession of the property mortgaged, but by its means the. mortgagee is placed in a position which entitles him to .show, as against creditors and subsequent mortgagees and purchasers, that the mortgage was given in good faith, without intent to hinder or defraud creditors.
Such filing is made essential in all cases where there is not an immediate delivery and- actual change of possession, and in such cases every mortgage not so filed is declared by the act to be absolutely void against *411 creditors, whose rights, in such case, date from the delivery of the execution to the sheriff, and against subsequent mortgagees or purchasers in good faith (Hale v. Sweet, 40 N. Y. [1 Hand] 97).
Now, in the present case it is fully conceded that the chattel mortgage was a valid one in its inception, that it was duly filed before the rights of any creditor attached, and that payment of the amount secured by it, and possession of the furniture have been duly demanded within the first year. But the referee holds that it ceased to be valid as against the plaintiff, representing a creditor of the mortgagor, because not refiled within thirty days next preceding the expiration of one year from the first filing.
Tiiat this would be so, in case no default had occurred in the performance of the condition, is too clear for argument. But it seems to me, that it may well be doubted, whether that provision applies after default. As above shown, the title of the mortgagee becomes absolute at law, upon default, not only against the mortgagor but also his creditors, and the mortgage, which has fulfilled its object, is thereupon turned into an absolute bill of sale. The claim, therefore, that such absolute title, once acquired, can be made to cease, by operation of law and without actual fraud, to have any value whatever after the expiration of one year against the creditors of the mortgagor then existing, appears not only illogical but unreasonable. Before it can be allowed, the language of the statute must be found to be so clear and imperative as to leave no choice. In Newell v. Warren, 44 N. Y. (5 Hand) 344, the commission of appeals held that, under the statute referred to, it was unnecessary to require more than the legislature did, and that consequently a mortgage once refiled at the end of the first year continues valid with- ' out further refiling in subsequent years. And in Hulsen v. Walter, 34 How. Pr., 385, Van Vobst J., inti *412 mated that a refiling, after default, may, in some instances, even be improper. He says: A person ignorant that a forfeiture had occurred, and who had acted upon such refiling as an acknowledgment, on the part of the mortgagee, that his title had not .become absolute, might make a claim on that ground.
How, from the language of the statute it is by no means clear that the requirement as to a refiling is intended to apply to a chattel mortgage after forfeiture. The cases of Ely v. Carnley, 19 N. Y. 496, and Levin v. Russell, 42 N. Y. (3 Hand) 251, do- not go to the full 'extent of deciding authoritatively that it does so apply. In the first case, the mortgage was payable on demand, and no demand had been made at the time of delivery by the creditor of the execution to the sheriff. Consequently a refiling was absolutely necessary. The additional remark, made by the learned justice who delivered the opinion of the court, that .when the title to the property has absolutely vested in the mortgagee, by the mortgagor’s failure to perform the condition, a refiling is necessary to preserve the title of the mortgagee, when there has been no change of-possession, is merely the expression of a judicial opinion, although entitled, as such, to great respect. And even that is followed up by the further qualification : Once a mortgage, it so continues for the purpose of filing, until the rights of the parties have been changed by some new act or contract in relation to the property.
In the second case, more -than a year had expired after the filing of plaintiff’s mortgage, before he took possession, and no statement exhibiting the interest claimed by him had been filed at the expiration of the first year ; but plaintiff took possession before the lien of any creditor attached. Upon these facts it was held by the court (the same learned judge who had delivered the opinion in the case of Ely v. Carnley, supra, delivering the opinion .in this case), that the omission of *413 the plaintiff to file a statement of his interest in the property, the mortgage, as required by statute, to preserve his lien against the creditors of the mortgagor, was obviated by the proof showing that the plaintiff took possession of the property by virtue of his mortgage in the lifetime of the mortgagor and before the lien of any creditor had attached, and that he retained such possession until the property was taken from him by the defendant.
If this last decision is to be strictly followed, as an authority, in all cases which come within the language of it, the following question still remains unanswered, viz : How can a mortgagee, who has omitted to refile, take possession after the expiration of one year from the original filing, and maintain such possession against the creditors of the mortgagor, who levy upon it the day after he has. taken possession, if his mortgage, by reason of non-compliance with the statute, had already cea,sed, by force of the statute, to have any validity whatever against such creditors %
In Dillingham v. Bolt, 37 N. Y. 198, to which I have been referred, there is no evidence of any default, and the decision made is an authority only upon the point that the removal of the mortgagor from the State within the year makes compliance with that provision-of the statute which requires the refiling to be made in the office of the clerk* of the town where the mortgagor then resides, impossible, and that, upon such contingency, the mortgagee must-, as against the creditors and purchasers named in the section, take advantage of his mortgage within the year, or lose the benefit of it as against them.
But as I do not find it necessary to the decision of this ca^e to go to the extent of holding that such refiling is wholly unnecessary, after default, I shall refrain from placing my decision upon that ground. There is an abundance of authority to sustain the proposition *414 that such refiling is unnecessary for the preservation of the mortgagee’s rights acquired upon the mortgagor’s default, whenever an actual change of possession of the property has taken place or the rights of the parties have been changed by some new act or contract in relation to the property, which would render a refiling an idle ceremony. That such a change has taken place in this case, appears not only in evidence, but is established by the findings of the referee. The testimony shows, and the referee substantially found, as matters of fact, that after the executio'n of the mortgage a demand was made on Porter, the mortgagor, for payment of the amount secured by it, and possession of the furniture demanded; that the amount was not paid ; and that thereupon, as the mortgagee would not trust Porter with the property, Benjamin Rathbun was placed in possession of the property for the mortgagee, with the mortgagor’s consent, and that he continued in such possession until the mortgage sale. This worked all the delivery and change of possession of which the property was capable, and was prima facie a compliance with the statute concerning fraudulent conveyances. The mortgagee was not bound to remove it, for, having the absolute title, he had a right to hire it out with or without compensation. ¡Nor was he bound to make the change more conspicuous by affixing a written or printed notice of his right of ownership to each article of furniture. If the mortgage was valid in its inception, and the original condition, whereby the mortgagor was allowed to remain in possession until default, not fraudulent against the mortgagor’s creditors, the new arrangement made between the parties upon the occurrence of the default cannot, as matter of law, be deemed fraudulent against a creditor of the mortgagor, whose demand did not become merged into judgment until after the expiration of one year from the filing of the mortgage.
*415 The whole transaction between mortgagor and mortgagee may, in such case, be attacked by such creditor, as seems to have been done in the case of the Farmers’ Bank of Washington County v. Cowan, 2 Keyes, 217, 219, upon the ground that it was entered into or carried out with intent to hinder, delay, or defraud the mortgagor’s creditors, which is a question of fact.
But as the referee in this case has recognized the good faith of the parties to the original transaction and failed to find, as matter of fact, that such transaction was entered into or carried out with a fraudulent intent, and was for that reason fraudulent against creditors, be was not justified to adjudge, as matter of law, that the arrangement entered into between the parties upon default was fraudulent and void against the original plaintiff in this action, who, it appears, was not misled thereby, and at the time of the recovery of his judgment had full notice of said mortgage. The mere fact that Bathbun and Porter were copartners cannot be made to work such a result. It is only one of the many circumstances that may be looked at and considered on the determination of the question of actual fraud.
Upon the proof, and the facts as found, John F. Porter, at the time of the confession of judgment and of the sale on execution, had no interest in the property subject to levy and sale ; the title to the property was absolutely vested in the defendant, Parmly; and the sheriff’s sale of the right, title, and interest of John F. Porter in said property conveyed nothing to the purchaser.
The judgment must be reversed, the order of reference vacated, and a new trial ordered, with costs to the appellant to abide the event.
Moeell and Curtis, JJ., concurred.