GEORGE R. SHERMAN AND OTHERS, SURVIVORS, RESPONDENTS, v. JOHN D. SLAYBACK AND ANOTHER, APPELLANTS.

*Chattel mortgage — sale of the chattels in bulk, and at a place where they were not in view of the purchasers — such a purchase by the mortgagee does not extinguish the equity of the mortgagor — effect of the mortgagee retaining possession without a sale.*

In an action brought to charge the directors of a corporation, organized under chapter 611 of the Laws of 1875, with liability for its debts, by reason of their failure to file the annual reports required by that act for the years 1886 and 1887, it appeared that the corporation was, on August 24, 1886, indebted to the plaintiff in the action in the sum of $17,086.84, and on that day mortgaged its furnace, etc., held by it under lease, to secure such indebtedness and surrendered the same to the plaintiffs, who took possession thereof, and thereupon the corporation ceased to transact business.

On August 13, 1886, the corporation, by its treasurer, executed and delivered to the plaintiffs an instrument in writing, in which it acknowledged itself indebted

to the plaintiffs, and, in consideration of an extension of time of payment of the debt and other considerations, it released and surrendered to the plaintiffs its said furnace, adjacent premises and property, of which the paper recited that the plaintiffs had taken possession at six o'clock on that day, and on August twenty-fourth, to secure the indebtedness to the plaintiffs, a bill of sale or chattel mortgage was executed by the corporation of certain chattels therein mentioned, providing for the payment of such sum on or before the 1st day of January, 1887.

The corporation having defaulted in its payment the chattels were sold on January 18, 1887, at the door of one of the mills. The sale did not take place in sight of all the property, which was offered for sale in bulk, and not in parcels, and was struck off to one of the plaintiffs for $1,000, no one except the secretary of the company being present. The property covered by the mortgage exceeded in value the amount of the plaintiffs' claim.

On the 13th day of June, 1887, the present action was brought to charge the defendants, as directors, with the balance of the indebtedness of the company.

*Held*, that as the object of the sale was to cut off the defendants' right to redemption in equity, that the sale, in order to effect that purpose. must, in all respects, be regular and fair and *bona fide*, and one that would be upheld as a valid sale at common law.

That as this sale was made of personal property which was not within the view of the bidders, and was not sold in separate parcels, that it could not be sustained.

*Semble*, that by reason of the invalidity of the sale the mortgagee continued to hold, in his capacity as mortgagee, possession of the chattels, in which the mortgagor still had the equity of redemption, and that the possession and retention by the mortgagee of property of sufficient value to pay the debt without making a valid sale thereof, would operate as a payment and satisfaction of the plaintiffs' claim pending the continuance of such possession thereof by the mortgagee.

*Semble*, that, as the debt, for which, as directors, the defendants were sought to be made liable, could not have been recovered against the corporation if an action had been brought against it, while this condition of affairs existed, that the directors could not be held liable therefor.

APPEAL by the defendants John D. Slayback and Frank B. Robinson from a judgment of the Supreme Court, entered in the office of the clerk of the county of Essex on the 18th day of June, 1889, and from an order granting an extra allowance to the plaintiffs, which order was also duly entered in the office of the clerk of the county of Essex.

The action was brought for the purpose of enforcing the individual liability of certain directors of the Port Henry Steel and Iron Company (Limited), because of the failure of the board of directors to file an annual report, and because of their having made a false certificate. The action was tried before a referee, upon whose report judgment was entered in favor of the plaintiffs.

*Bacon & Merritt*, for the appellants.

*Waldo & McLaughlin*, for the respondents.

MAYHAM, J.:

This is an appeal from a judgment in favor of the plaintiffs, entered upon the report of a referee for $19,689.44, recovery and costs. The action was brought to charge the defendants as directors of the Port Henry Steel and Iron Company (Limited), with a debt alleged to be due to the plaintiff from that company. Under the provisions of chapter 611 of the Laws of 1875, under which the company was organized, on the grounds, first, that the defendants, as directors, had failed to file the annual reports required by that act for the years 1886 and 1887; and, secondly, for making an alleged false certificate that the capital stock of the company had been actually paid in, in cash, before the making of such certificate. The referee found that the certificate that the capital stock had been paid in full was true, and disposed of that question in favor of the defendants; so that the only real question in controversy on this appeal is, as to whether or not these defendants are liable for not filing their annual report required to be filed under the provisions of chapter 611 of Laws of 1875, within twenty days after the 1st day of January, 1886 and 1887.

On the 23d of April, 1885, the copartnership known as the firm of "Witherbee, Sherman & Co., consisting of Silas H. Witherbee, George R. Sherman, Frank S. Witherbee, George D. Sherman and Walter C. Witherbee, leased to John D. Slayback, Charles M. Raymond, Frank B. Robinson, Andrew Dickey and Thomas F. Witherbee, their blast furnace, known as the "Cedar Point Furnace," at Port Henry, Essex county, N. Y., lease to run from the 15th day of June, 1885, for five years, for the rent and royalty of one dollar per ton of pig iron which the lessees shall make, the lessees covenanting that it shall amount to not less than $1,200 in any one year. The lease also provides for the time and manner of payment. The lease also provides that the lessees might, at any time before the 1st of June, 1885, form a corporation under the general manufacturing laws of the State of New York, with a

capital of not less than $100,000, and in that case the lessees had the right to transfer the lease to such corporation.

On the twenty-first day of May the lessees filed in the Secretary of State's office articles of incorporation as provided in said lease, and the pleadings admit that the defendants are the directors and officers of such corporation, and had been such directors and officers and continued to act in that capacity from the time of its organization until June 7, 1887.

The name of the corporation was the "Port Henry Steel and Iron Company (Limited)." Immediately after the incorporation the lessees assigned to it the lease and the corporation took possession, and in June, 1885, commenced operations under this lease.

The referee finds, and the case shows, that no annual report was made by the directors and officers of this corporation within twenty days after the 1st of January, 1886, as required by section 18 of chapter 611 of the Laws of 1875. The referee also found, upon the request of the defendants, that, on the 24th day of August, 1886, this corporation was indebted to the plaintiff in the sum of $17,086.84, and that on that day it mortgaged its property to secure such indebtedness and surrendered its plant to the plaintiffs, who took possession, and thereupon the company ceased to manufacture and never resumed, and that the company was then bankrupt. The referee also found that the indebtedness has never been paid or satisfied, except one thousand dollars ($1,000), and that there remains due $16,496.00, to which finding the defendants duly excepted.

On the 13th of August, 1886, the corporation, by its treasurer, executed and delivered to the plaintiffs an instrument in writing, in which it acknowledged itself indebted to the plaintiffs, and in consideration of an extension of time of payment and other considerations, it released and surrendered to the plaintiffs said furnace, adjacent premises and property, and all its interest in the property, and reciting that the plaintiffs have taken possession thereof at six o'clock on that day.

The instrument also provided for the return of the property to the company on the 1st day of January, 1887, provided the company perform certain stipulations mentioned in the writing on demand of the company. No rent to accrue while the plaintiffs held possession, and if not demanded before that time the right

of the company under the lease and to all of the property is surrendered, and the same was to be regarded as the property of the plaintiffs.

It also provided that the corporation was to have the use of the yard and grounds on which their iron or steel was piled until the 1st of January, 1887.

This instrument was acknowledged on the 24th day of August, 1886, and on that day a bill of sale or chattel mortgage was executed by this corporation, by its treasurer, to secure an indebtedness of the company' to the plaintiffs of $17,086.84, on all the property of the company in the " Cedar Point Furnace," and all scraps or scrap iron, conditioned for the payment of that sum on or before the 1st of January, 1887, and also all other indebtedness of the company to the plaintiff : and in case of non-payment at that time plaintiffs were authorized to take possession and sell the same at public or private sale for the satisfaction of such indebtedness.

On the twelfth of January, the company having failed to pay such indebtedness, the plaintiff gave notice of a sale to take place on the eighteenth of that month.

On that day the plaintiff, by an auctioneer, at the door of one of the mills, and not in sight of all the property, offered the mortgaged property for sale in bulk, and not in parcels, and the same was struck off and sold to one of the plaintiffs for $1,000, no one except the secretary of the company being present, and no one, as is claimed, authorized to represent the company on such sale.

This action was commenced on the 13th day of June, 1887. As the same is in the nature of a penal action as to these defendants, personally and *ex delicto* in its character, it is incumbent on the plaintiff to prove a state of facts clearly bringing the case within the statutory provisions which give the right of action. (*Carr* v. *Rischer*, 119 N. Y., 117.)

The first point made by the appellant is that the plaintiffs failed to prove an indebtedness of the corporation at the time of the commencement of the action or at any time before the trial. If this contention be true, in fact, then the plaintiffs could not recover.

The rule is well settled upon authority, and it would seem to be well founded in principle, that unless the corporation were indebted so that an action was maintainable against it at the time of the com-

mencement of the action against the directors, no action would be maintainable against them.

In the *Rector, etc., of the Trinity Church* v. *Vanderbilt* (98 N. Y., 174) : " If there be no obligation giving a present right of action against the company, there is no debt which can be demanded as a penalty against the trustee."

We must, therefore, first determine whether at the time of the commencement of this action, June 13, 1887, there was a debt due the plaintiff from the company on which a present right of action existed.

When the parties plaintiff and the company entered into the contract of August 13, 1886, it is quite apparent that the corporation was indebted to the plaintiffs, but in what amount does not appear. By that contract the corporation obtained an extension until January 1, 1887, and by that extension the plaintiffs postponed any right of action that might then have existed against the corporation, and consequently no claim could, during that period, be enforced against the defendants as trustees.

In *Jones* v. *Barlow* (62 N. Y., 202) it was held that trustees are only liable to an action for debts actually due, and for which a present right of action exists against the corporation. But it was also held that an extension of the time of payment by the creditor to the corporation did not operate to discharge the trustees if the corporation failed to pay at the end of the extension, as the act of extension is to be regarded as a transaction between them and the creditor.

It follows, therefore, that if, after the expiration of the extension, the debt still exists, and if it has not in some way been discharged, the trustee or director in default in making the report required by law will still be liable for the debt.

The extension in this case, either by the contract of August 13 or the mortgage of August 24, 1886, did not defer payment beyond January 1, 1887, and in the meantime the corporation did not pay the debt unless the acceptance of the property under the contract of August thirteenth, or the possession of the same under the chattel mortgage of August twenty-fourth operated as a payment of the same.

The defendants insist that taking possession of property largely in excess in value of the amount of the debt, and holding it

·after default, vested the title in the plaintiffs and operated as payment of the debt, and was tantamount to a satisfaction of the same after the first of January when the company defaulted in the payment after maturity of the mortgage.

If this position can be successfully maintained, then the plaintiffs at the time of the commencement of the action, June 13, 1887, which was after default in the mortgage, had no claim, and the corporation at that time owed them no debt, and the defendants would, consequently, be exonerated from any forfeiture or liability.

In this State the law seems well settled that, after default in a chattel mortgage, the title vests in the mortgagee, and he may, if not in possession, reduce the property to his possession, and is not required to sell; and in such case, if the property is equal in value to the amount of the debt, taking possession amounts to a satisfaction of the debt.

In *Morgan* v. *Plumb* (9 Wend., 392), SAVAGE, Ch. J., in delivering the opinion of the court, says: "When the defendants in this case took possession under the mortgage, the property was worth the debt, and according to the decisions referred to in Massachusetts and in this State, the debt was paid."

In *Case* v. *Boughton* (11 Wend., 109) the court says: "If the mortgagee simply re-enters, but does not sell, and the property is of sufficient value to satisfy the debt, the debt is paid."

The title in the chattel mortgaged, after default, under a chattel mortgage is absolute in the mortgagee. (Thomas on Mortgages, 445, 446.) Unquestionably the mortgagee after default may sell the mortgaged chattel under the power of sale, and must do so or he waives his claim for deficiency; but, in order to fix the amount of the deficiency and foreclose the rights of the mortgagor and prevent him from redeeming in equity, he must make a fair and *bona fide* sale under the power contained in the mortgage, or have recourse to actual foreclosure of the equity by judicial proceedings. (*Porter* v. *Parmly*, 43 How., 445.) But the plaintiff in this case made a sale under the power of sale in the mortgage, and if that sale was a fair and just and *bona fide* sale for a reasonably fair price, which was fairly applied upon the debt, then the defendants cannot complain and would be bound by it; and hence we are brought to a consideration of the circumstances of that sale. On the 8th and

10th of January, 1887, plaintiffs caused to be posted in three or more public places at Port Henry written or printed notice of sale of all the right and interest of the Port Henry Steel and Iron Company, in and to the buildings, machinery, erections, tools, fixtures and appliances; also hoisting machines or engines, all machinery or apparatus connected therewith, placed by it upon the premises; and also all scraps and scrap-iron owned by it on said premises. The property includes the buildings, machinery and fixtures on the south side of the furnace erected for use in making steel and for other purposes by said company. The notice also recited that it was by virtue of the chattel mortgage, and that the property was to be sold at public auction on the eighteenth of January at 1 o'clock P. M. at the Cedar Point furnace. The case shows that the sale took place at the time fixed in the notice, and was made under an arch-way between the furnaces. The notice was read by the auctioneer and all the property offered for sale together, and not in parcels. There were but two or three persons there, except the members of the plaintiffs' firm.

There was but one bid made, and that was for $1,000, and the property was sold on that bid to Thomas Witherbee, one of plaintiffs' firm; some of the property sold was not in view at the time of the sale.

The referee finds that the property exceeded in value the amount of plaintiffs' debts or claim at the time of the sale, and the undisputed evidence shows it to be largely in excess of such indebtedness. Had there been no sale, as we have seen, the possession and retention of the property by the mortgagee would, in law, have operated as payment and satisfaction of the plaintiffs' claim. (*Morgan* v. *Plumb*, 9 Wend., 392, *supra; Case* v. *Boughton*, 11 id., *supra.*) Did this sale to the mortgagee, one of the plaintiffs, for a grossly inadequate consideration, under the circumstances of this case, change the situation of the plaintiffs, as mortgagees in possession of mortgaged property after default sufficient to satisfy their debt? I think not. It is true that a mortgagee of chattels may purchase at the mortgage sale, and that circumstance alone does not render the sale void. (*Casserly* v. *Witherbee*, 119 N. Y., 522.) But it may be seriously questioned whether the situation of a mortgagee in possession, who sells the mortgaged property under the power of sale and becomes himself the purchaser, does not still occupy the position

of a mortgagee in possession with his mortgage debt paid by reason of the value of the property exceeding the amount of the mortgage debt. In the *Buffalo Steam Engine Works* v. *The Sun Mutual Insurance Company* (17 N. Y., 403) it was held that a sale of a chattel under a mortgage by a mortgagee in possession to himself, by virtue of the power of sale in the mortgage, did not divest the equity of redemption of the mortgagor, and the court says: "He (the mortgagor) still held the equity of redemption. Of this he was not absolutely divested even after forfeiture of the condition of the second mortgage The pretended foreclosure and sale could have no effect to divest him of that interest. It was not a judicial sale, but simply an attempt to sell by virtue of the power of sale contained in the mortgage. The mortgagee, therefore, becoming himself the purchaser, acquired no additional title by the sale, but remained mortgagee still. As owner of the property by virtue of the mortgage he could not sell to himself, and as the grantee of a power, although coupled with an interest, he would be equally unable to sell to himself without some statutory aid."

Applying this rule to the case at bar, the plaintiffs would still be mortgagees in possession of the mortgaged property after default, and the property exceeding in value the amount of the plaintiffs' claim against the corporation there would be no debt due the plaintiffs from the corporation upon which forfeiture by the defendants could be predicated.

The referee found that this sale was fairly conducted and was a valid sale, and that the $1,000 bid should be deducted from the plaintiffs' claim, and ordered judgment against the defendants for the balance. To these findings and conclusions the defendants except. We think the exceptions well taken. We cannot agree with the learned referee that in this action, as against these defendants, upon the testimony as it stands in this case, the sale should be upheld. It is quite apparent that the object of this sale was to cut off the defendants' right to redeem in equity, and to effect that purpose we have seen that the sale must in all respects be regular, fair and *bona fide*, and one that would be upheld as a valid sale at common law.

In *Shimer* v. *Mosher* (39 Hun, 155), the court says: "It is a rule of the common law, that when personal property is sold at a public sale, either judicial or statutory, the same should be in view

of the bidders and should be sold in such separate parcels as is best calculated to bring the highest price.

In *Stief* v. *Hart* (1 N. Y., 20), it was said that a sale of personal property without having it within the view of the bidders, for the purpose of ascertaining and estimating its value, was an abuse of the process of the court, and was condemned by the common law without the aid of the statute as to the manner of conducting the sale. (*Linnendoll* v. *Doe*, 14 Johns., 222, *Sheldon* v. *Soper*, Id., 352; *Cresson* v. *Stout*, 17 id., 116.)

These cases are quoted with approbation in *Shimer* v. *Mosher* (*supra*) and the court adds: "This rule has been uniformly enforced by the courts and has its foundation in the plainest precepts of fairness and public policy." We think it has been disregarded in this case, and as it is a case highly penal in its character we think that the safeguards and guarantees furnished by law, and ordinarily available for the protection of parties and for the due administration of the law, should be applied.

The judgment is reversed, the referee discharged and a new trial ordered, costs to abide the event.

LEARNED, P. J. :

I think that the decision in *Casserly* v. *Witherbee* (119 N. Y., 522) is practically decisive of this case, and, therefore, concur in the result.

LANDON, J. :

It was held in *Casserly* v. *Witherbee* (119 N. Y. 522, 526), an action in which the mortgage sale here in question was involved, that the fact that the mortgagees bought the property at the sale under their chattel mortgage does not, of itself, render the sale void. It was alleged in the complaint in that case that the property bought by the mortgagees under their mortgage for $1,000 was worth $60,000, and similar allegations were made in that complaint as to the sale of the property in bulk, while invisible to the persons attending the sale, as are here shown by the evidence to be true. The court held that such a sale was invalid. The referee in this action finds that, after the mortgage sale, the plaintiffs sold and disposed of some of the property and applied other portions thereof to their own use, and that the value of the portion applied to their own

use added to the amounts received by them upon sales of other portions, are in excess of the indebtedness of the company to the plaintiffs, namely, $17,086.84. The case cited came up on demurrer to the complaint The sale of property, worth to exceed $17,086.84 for $1,000, offends the sense of justice in the same manner, but to a less degree than the sale of $60,000 worth of property for $1,000. It is still violent injustice, and we cannot but believe that it was suffered to take place under a misapprehension by the company of the purpose for which the plaintiffs made it. Looking for the causes of this misapprehension, we find that the chattel mortgage was given August 24, 1886, but that on the 13th of August 1886, the Steel and Iron Company delivered to the plaintiffs an agreement under which the latter took possession of the leased property and the plant and appliances of the company thereon, and extended payment of the company's indebtedness to them until January 1, 1887. This agreement was intended to suspend the lease and rent while the company was out of possession, and to permit the plaintiffs to operate the works. The company was to be restored to possession at its election upon the performance of certain specified conditions, but in case it should not demand it on or before January 1, 1887, then " all right of said Steel and Iron Company under said lease and to all said property is surrendered and the same is to be regarded as the property of said Witherbees, Sherman & Co."

Thus, when the chattel mortgage was given, the plaintiffs were in possession of the property under the agreement. The company did not demand re-possession of the property on or before January 1, 1887, and, therefore, when the plaintiffs subsequently sold it under the chattel mortgage they sold what was regarded under the agreement as their own property. If, under the agreement, they had the legal title, they had it for the purpose of realizing the amount due them. Between the agreement and the chattel mortgage they have so managed their security as to realize from it more than the amount due them. Why should they not credit the company with it? The foreclosure of the chattel mortgage could hardly be regarded by the company as a hostile proceeding at the date it was made. If the agreement had not conferred full title, the company naturally would not object to the plaintiffs making it as complete

as possible, in order the better to realize upon the security. The company certainly could not have understood that the plaintiffs thereby intended to deprive the company of nineteen out of every twenty dollars to be realized from the security. The plaintiffs would have disclaimed any such intention.

I think that sale should be regarded as merely perfecting the plaintiffs' legal title in order the better to dispose of the security for the benefit of both debtor and creditor, and hence that the plaintiffs should account to the company for all they have realized upon the security.

Again, though the plaintiffs might be buyers as well as sellers at their mortgage sale, yet the sale to themselves should be above just suspicion as to its propriety and fairness; the result here shows that this sale was unjust whether there was any wrong intended or not; and as in this action no third persons are to be injured by setting it aside, it should be set aside unless treated as vesting the title in the plaintiffs in trust to apply the proceeds of the property to the benefit of the company.

I, therefore, concur in the result reached by Justice MAYHAM.

LEARNED, P. J., concurred.

Judgment reversed, new trial granted, referee discharged, costs to abide event.