MANHATTAN TAXI SERVICE CORPORATION, Appellant, *v.* CHECKER CAB MANUFACTURING CORPORATION and Another, Respondents.

Second Department, October 7, 1929.

*Nathan Kelmenson,* for the appellant.

*Samuel H. Kaufman* [*Sylvester Pindyck* and *Leo Oppenheimer* with him on the brief], for the respondent Checker Cab Manufacturing Corporation.

*Henry C. Burnstine,* for the respondent Hugo Hoffmann Credit Corporation.

KAPPER, J. The plaintiff in July and August, 1923, bought thirteen taxicabs from the defendant Checker Cab Manufacturing Corporation. The purchase price of each cab was $2,892, of which $723 was in cash, the balance of $2,169 being payable by a series of promissory notes due monthly secured by a conditional bill of sale which provided that title to the cabs should remain in the seller until the notes were paid. A single taxicab was later sold to plaintiff on the same terms, making fourteen in all. In November, 1923, the Checker Company sold the plaintiff's promissory notes to the defendant Hugo Hoffmann Credit Corporation. When this controversy arose, plaintiff in addition to its down payment of $723 had paid nine notes on each cab, each note being for $120.50 with interest. On July 28, 1924, plaintiff being in default in payment of due notes, the Checker Company repossessed itself of the cabs which had been in the possession and use of the plaintiff in the conduct of a taxicab business.

The action is predicated on certain sections of the Uniform Conditional Sales Act, being article 4 of the Personal Property Law (as added by Laws of 1922, chap. 642).

Section 79 of this law provides for a sale " at public auction " of goods retaken by the seller where the buyer has paid at least fifty per cent of the purchase price at the time of the retaking.

There is no dispute that plaintiff paid in excess of the fifty per cent on account of the purchase price of the cabs.

The buyer's interest in a proper sale of these chattels is distinctly shown by sections 80-a and 80-b of the law. They provide:

" § 80-a. Proceeds of resale. The proceeds of the resale shall be applied (1) to the payment of the expenses thereof, (2) to the payment of the expenses of retaking, keeping and storing the goods, (3) to the satisfaction of the balance due under the contract. Any sum remaining after the satisfaction of such claims shall be paid to the buyer.

" § 80-b. Deficiency on resale. If the proceeds of the resale are not sufficient to defray the expenses thereof, and also the expenses of retaking, keeping and storing the goods and the balance due upon the purchase price, the seller may recover the deficiency from the buyer, or from any one who has succeeded to the obligations of the buyer."

Plaintiff claims that the sale was not conducted as the law requires, and upon that basis invokes section 80-e of the law which is as follows:

" § 80-e. Recovery of part payments. If the seller fails to comply with the provisions of sections seventy-eight, seventy-nine, eighty, eighty-a, and eighty-c, after retaking the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract, with interest."

The complaint, therefore, seeks to recover twenty-five per cent of the amounts which plaintiff paid on account of the purchase of the taxicabs.

As all of the facts leading up to the retaking of the taxicabs are practically conceded, the sole question here is whether or not the defendants proceeded in accordance with the Personal Property Law provisions in the disposition of the retaken taxicabs by means of a proper public sale as therein prescribed.

Plaintiff urges that it did not receive notice of sale. This is conceded to be true, as the notices themselves show a return to the writer. The law (§ 79, *supra*) requires the seller to give the buyer not less than ten days' written notice of the sale " either personally or by registered mail, directed to the buyer at his last known place of business or residence." There is no dispute about the correctness of the address of plaintiff which is stated in the conditional bill of sale itself, and a stipulation accordingly is in the record. The trial court correctly charged, leaving the jury to find, which they did, whether notice had been given to the last known place of business of the plaintiff. No exception was taken to this charge by plaintiff.

Section 79 (*supra*) also requires publication of a notice of the sale

where at the time of the retaking by the vendor the vendee has paid $500 or more on the purchase price. That is the case here, and so publication followed, viz.: On August 18, 1924, a notice was published in the New York *Commercial*, a daily newspaper, to the effect that "By virtue of a default in certain conditional sales contracts, Jere J. Reid, Auctioneer, will sell at public auction August 23rd, 1924, 11 A. M., Room 805, 1767 Broadway, Borough of Manhattan, the following Checker taxicabs," enumerating *fifty-eight in all, including plaintiff's cabs*, the notice being signed " Hugo Hoffmann Credit Corporation," and further stating that they were " retaken from Manix Taxi Holding Company, Inc., Adolph Doctor and Manhattan Taxi Service Corp., and David Schoenfeld."

There was some evidence that immediately or approximately a short time before the sale, the plaintiff's cabs were inspected or looked at and were found to be in a very poor condition, and it is urged by the respondents that the plaintiff has shown no damage. It appears that on September 30, 1924, the Checker Company sold one of the cabs for $1,855 and all of the others were sold by the same defendant the latter part of 1924 and the early part of 1925, for what price is not shown.

It is the claim of the defendant Checker Company, however, that the average reconditioning cost of these cabs was $800, and as $1,084.50 was admittedly the unpaid balance owing under the conditional sales agreement, no profit would come to the respondents even if the cabs were subsequently sold for $1,855.

The point regarding lack of proof of damage is immaterial in the light of the cause of action seeking to recover one-fourth of the sum of all payments made under the contract pursuant to section 80-e of the law, above quoted. To that recovery plaintiff would be entitled, if the seller failed to observe and comply with the statutory provisions regarding the sale. And so we come to the question whether or not this sale was conducted as required by statute.

The auctioneer testified that the sale took place at 1767 Broadway. Further: " When I got there I inquired if anybody was present for an auction sale, and I was advised that there were no outsiders present, that a representative of the Hugo Hoffmann Credit Corporation was present to attend the sale. I then offered the fifty-eight cabs for sale; and after reading off the details, according to custom, ' I now offer the following forty cabs,' on the first sale sheet, ' retaken from Manix Holding Company, Incorporated, by reason of a default in certain conditional sales contracts; the one Checker cab retaken from Adolph Doctor and Manhattan Taxi Service Corporation, by reason of the default in certain conditional

sales contracts the thirteen Checker cabs, motor number so-and-so, retaken from Manhattan Taxi Service Corporation; and the four Checker cabs retaken from David Schoenfeld and Manix by reason of default in certain sales contracts.' I received a bid of $500 each for the fifty-eight taxicabs, and was given the name of the purchaser as Hugo Hoffmann. Q. Did you knock down the fifty-eight taxicabs to the bidder? A. I did. Q. Was that bidder the highest bidder at that auction sale? A. He was."

There was no dispute of the most important fact that these cabs were not at the place of sale on Broadway, Manhattan, but were at the garage of the defendant Checker Company in Long Island City. This was emphasized by the auctioneer whose further testimony was that the cabs were not at the place of sale, and so far as he knew " they might have been a hundred miles away or a thousand miles away." The auctioneer also testified that at every public sale held by him, " as in the case of real estate and automobiles," he announced to prospective bidders, thus: " I asked them the question if they have seen the property. I asked them ' Have you seen the property before you make any bids? ' If they say they have not, I insist that they see the property; and in a case like this, where it is the sale of an automobile I adjourn the sale and find out first where the cars are * * * The Court (to witness): In this case you did not do that, did you? The Witness: In this case I recognized a representative of the Hugo Hoffmann Credit Corporation, and there were no outsiders present."

While there is grave doubt of the validity of this sale of fifty-eight taxicabs in bulk, only fourteen of which were plaintiff's, it being a rule of the common law that a public sale, either judicial or statutory, should dispose of the property " in such separate parcels as is best calculated to bring the highest price " (*Shimer* v. *Mosher*, 39 Hun, 153, at p. 155), there seems to be ample authority which, at least, required the automobiles to be in view of the bidders at the time of the sale. Numerous cases involving this question of the presence of the property within the view of the bidders have arisen under section 1428 of the former Code of Civil Procedure (now section 706 of the Civil Practice Act), relating to sales of personal property under execution, that statute providing that " personal property shall not be offered for sale unless it is present and within the view of those attending the sale." Such sales without the property being in view of the bidders have been held illegal in *Stief* v. *Hart* (1 N. Y. 20); *Shimer* v. *Mosher* (*supra*); *Sherman* v. *Slayback* (58 Hun, 255); *Welch* v. *Woodruff* (20 N. Y. St. Repr. 840, 846), and the mere fact that bidders were not present, as was claimed in the case at bar, does not make the sale valid

where otherwise invalid because the property was not present at the place of sale. (*Sherman* v. *Slayback, supra.*) Where the purpose of a sale is to cut off the right of redemption or to lessen an equity, to accomplish it " the sale must in all respects be regular, fair and *bona fide*, and one that would be upheld as a valid sale at common law." (*Sherman* v. *Slayback, supra*, at p. 263.)

" Public sales of personal property not within view of the bidders at the sale were declared void by judicial decisions on the plainest grounds of public policy before the Revised Statutes were passed." (*Stief* v. *Hart, supra*, at p. 25.) No distinction in principle exists between sales under an execution and sales under the Uniform Conditional Sales Act which is now before us. Both are statutory sales, and when no specific directions are given in the statute the common-law rule applies requiring personal property sold at public auction to be " physically at the place of sale." (*Strickland* v. *Hare & Chase, Inc.*, 217 App. Div. 196, 197.) In the case last cited we have one on all fours with the present case. There an automobile was retaken by the vendor under a conditional sale contract, the court holding that a sale at public auction of property retaken by a conditional sale vendor is not valid where the property is not physically present at the place of the sale.

The appellant, in my opinion, is, therefore, correct in its contention that the sale of its fourteen taxicabs was not a sale at public auction as the statute commanded, and hence the judgments should be reversed upon the law and the facts and a new trial granted, with costs to appellant to abide the event.

LAZANSKY, P. J., HAGARTY, SEEGER and CARSWELL, JJ., concur.

Judgments reversed upon the law and the facts and a new trial granted, with costs to appellant to abide the event.